NONANTUM WORSTED COMPANY *vs.* HOLLISTON MILLS.

Suffolk.  March 14, 1889. — June 18, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Insolvent Debtor — Assignment in Trust for Benefit of Creditors.*

An assignment by a corporation to a trustee, after reciting its inability "to pay its debts," and its desire to convey its property for the benefit of its creditors without any preference, stipulated that such property should be distributed ratably among them with legal priorities; that the attachments of creditors party thereto should be dissolved, and that no such creditor should attach or levy an execution on its property; that no holder of any debt, upon which another was absolutely or contingently liable, should by signing it release such other person, or in any way impair his liability, but should reserve all rights and remedies against him, and "the same may be as fully enforced as if these presents had not been executed." *Held*, that the assignment did not operate to discharge

the debts of the corporation, and was no bar to an action by a creditor, pending the carrying out of the assignment, as a preliminary to enforcing the statutory liability of its officers and stockholders.

CONTRACT upon two promissory notes, dated respectively November 23, 1887, and December 3, 1887, each payable four months after date to the plaintiff's order, and signed by the defendant. Writ dated April 11, 1888. Trial in the Superior Court, before *Lathrop*, J., who reported the case for the determination of this court, in substance as follows.

The plaintiff introduced the notes in evidence, and rested. The defendant relied in defence upon an assignment under seal, dated February 1, 1888, made by it to a trustee for the benefit of its creditors, the execution of which by the parties before the date of the writ was admitted. This assignment, which consisted of an indenture under seal of three parts, provided for the transfer of all the property of the corporation to the trustee:

" In trust, to hold, manage, and take care of the same, and to convert the same into money, and for that purpose to collect said claims, debts, and choses in action, with power to compound for any of them, taking such part or thing for the whole as said party of the second part shall deem expedient, and to sell, by private contract or public auction, for cash or on credit, and with or without guaranty of payments, and upon such terms, and at such time or times, place or places, and in such manner, as said party of the second part shall see fit, the whole or any part of said property, and to assign, transfer, and convey the property so sold to the purchaser or purchasers thereof, by good and sufficient deed or deeds, or other conveyances or transfers, and receive the proceeds of said sales. The trustees may manufacture and finish such raw material and goods in the process of manufacture as said company has now in its possession, and for that purpose may pay for such labor, and purchase and pay for such supplies, as he may deem necessary or proper. And upon the further trust to apply and dispose of all the net proceeds of the sales of the property hereby assigned or conveyed, and also the net proceeds from the collection of claims, debts, and choses in action hereby assigned, as follows, to wit: . . .

" To distribute and pay the remainder of said proceeds to and among the parties of the third part ratably in proportion

to the amounts owing by said Holliston Mills to each of them respectively, (whether now or hereafter payable,) made up as cash at the date of these presents, and interest added or rebated accordingly, without preference or priority, except that such creditors shall be preferred, and in such amounts, as is provided by the statutes of Massachusetts in regard to insolvent corporations, such payments to be made when and as often as the funds in the hands of the trustee will warrant, until the whole of said claims, with interest thereon from the date of these presents, shall be paid in full. . . .

" And it is further expressly provided and agreed, that no holder of any promissory note, draft, bill of exchange, check, or other debt to which the said Holliston Mills is a party, whether as drawer, indorser, guarantor, surety, maker, joint maker, or otherwise, and upon which any other person, firm, or corporation is absolutely or contingently liable, whether as drawer, indorser, guarantor, surety, maker, joint maker, or otherwise, does by signing or executing these presents release or discharge such other person or persons, firm, or corporation therefrom, or in any manner impair his or their liability thereon, but hereby fully reserves all rights and remedies thereon against any and all such other person or persons, firms, or corporation ; and the same may be as fully enforced as if these presents had not been executed. . . .

" And it is hereby further expressly agreed, that all attach-- ments made by any of said creditors shall, on their becoming parties hereto, be immediately dissolved, and no creditor party hereto shall hereafter make any attachment or levy any execution on said property or any part thereof, and the trustee, in case any existing attachment on said property shall be dissolved as aforesaid, may pay all costs and expenses incurred by the plaintiff in any suit in which such attachment is made.

" Provided always, and it is further declared and agreed, that, in case a petition under the insolvent laws of the Commonwealth of Massachusetts shall within six months from the day of the date hereof be filed in the proper court against said Holliston Mills before all the property hereby assigned and conveyed shall have been sold and converted into money, and the proceeds thereof disposed of and distributed pursuant to the provisions of

this instrument, and a warrant in insolvency shall be issued by the court upon such petition, then all of said property and proceeds which may then remain in said trustee undisposed of and undistributed pursuant to the terms of this instrument shall be by said trustee surrendered, assigned, transferred, and conveyed to the person or persons who shall have been chosen and qualified assignee or assignees of the estate of said Holliston Mills, under said insolvent laws, but without disturbing, affecting, or impairing the title to any property previously sold, assigned, transferred, or conveyed by said trustee, or any collections made by him, or any proceeds which shall have been previously disposed of and distributed under this instrument, or any acts previously done thereunder by said trustee.

" The parties of the third part hereto hereby, severally and respectively, accept the provisions and trusts herein contained for their benefit."

No further evidence was offered. In answer to a question by the judge, the counsel for the plaintiff stated that the action was brought for the purpose of enforcing the statutory liability of the directors of the corporation.

The judge ruled that, by reason of the assignment, the action had been prematurely brought, and directed a nonsuit.

If the ruling was sustained, or the plaintiff could not maintain the action, the plaintiff was to be nonsuit; otherwise, judgment was to be entered for the plaintiff.

*J. Fox*, for the plaintiff.

*H. G. Nichols*, for the defendant, contended that the execution of the assignment deprived the plaintiff of the right to sue the defendant for the recovery of its debt while the assignee was in process of winding up the estate in pursuance of the provisions of the assignment, there being no claim that the defendant had failed to do anything by it to be done, or that the assignee had in any respect failed in his duty, under the terms of the assignment; and cited *Tutlock* v. *Smith*, 3 Mo. & P. 676 ; *Good* v. *Cheesman*, 2 B. & Ad. 328; *Gibbons* v. *Vouillon*, 8 C. B. 483; *Mathews* v. *Taylor*, 2 M. & G. 667 ; *Eaton* v. *Lincoln*, 13 Mass. 424 ; *Bigelow* v. *Baldwin*, 1 Gray, 245.

W. ALLEN, J. The defendant made an assignment to a trustee for the benefit of its creditors, by indenture to which the

plaintiff became a party.   The question is, whether the debts owed to creditors who were parties to the indenture were discharged by it.   It seems plain that they were not.

The purpose of the debtor in making the assignment was not to procure a discharge.   The recital is that the " Holliston Mills is at present unable to pay its debts at maturity thereof, and i, is desirous to convey all its property for the benefit of its creditors, without preference or priority, one over the other or others." The assignment is of all its property, and it is to be distributed, ratably to the creditors, with such priorities as are provided by the insolvent law of this Commonwealth.   It is agreed that attachments made by creditors shall be dissolved on their becoming parties to the indenture, and that no creditor party shall make any attachment or levy any execution on the property; but no other agreement by creditors not to sue is expressed, and we cannot see that any is implied.

As the debtor is a corporation, and as its property cannot be touched, in a suit by such a creditor, nor the management and distribution of the property be affected by such a suit, it is difficult to see how an agreement not to sue can be implied.   There is an obvious reason why it should not be.   A suit and judgment against the corporation are necessary, in order to enforce the statutory liability of its officers and stockholders for its debts.   The question is not whether the creditor will be presumed to have given up his right to sue a penniless corporation, but whether he has given up his remedy against a surety for the debt.   That this was not the intention of the parties is not only to be presumed, but is expressed in terms which alone would be sufficient to preserve the right to sue the corporation.   They agree that no holder of any debt of the corporation upon which any other person is absolutely or contingently liable shall, by executing the indenture, release or discharge such other person, or in any manner impair his liability, but shall reserve all rights and remedies against him, and " the same may be as fully enforced as if these presents had not been executed."

The indenture, in its meaning and effect, bears a close resemblance to an assignment by a corporation under the insolvent laws of this Commonwealth, which are several times referred to in it.   It assigns all the property of the corporation to be dis-

tributed among its creditors; it dissolves attachments on the property, and protects it from being taken on attachment or execution; it does not discharge the debtor or release the debt; it preserves the remedy against officers and stockholders of the corporation, and what is part of that, the right to obtain a judgment against the corporation. See *Coburn* v. *Boston Papier Maché Manuf. Co.* 10 Gray, 243; *Johnson* v. *Somerville Dyeing & Bleaching Co.* 15 Gray, 216.     *Judgment for the plaintiff.*