JOHN OLSON vs. JAMES S. O'BRIEN and others.

April 8, 1891.

Insolvency—Defective Assignment—Estoppel of Creditor.—A creditor who has availed himself in any manner of what purported and was intended to be an assignment made by his debtor under Laws 1881, c. 148, the instrument being defective on its face, or has obtained and accepted benefits to be derived therefrom,—for example, by making and delivering proof of his claim to the assignee, and thereafter, although notified of its allowance, permitting it to stand as a proved-up claim against the estate,—bars himself from taking any action which will defeat the purpose of the instrument as a transfer of the property of the assignor.

Appeal by plaintiff from a judgment of the district court for Washington county, where the action was tried by *Crosby*, J.

*Searles & Gail*, for appellant.

*Warner, Richardson & Lawrence* and *Fayette Marsh*, for respondents.

COLLINS, J.[1] The plaintiff brought an action in the month of October, 1884, against the firm of Walker, Judd & Veazie, to recover upon certain promissory notes, and thereafter, January 8, 1886, obtained a judgment which was that day docketed in the county wherein was situated the real property hereinafter mentioned. Meantime (December 25, 1884) the firm made what purported and was in-

[1] Vanderburgh, J., did not sit. Mitchell, J., being absent, took no part in the decision.

tended to be an assignment for the benefit of creditors under the insolvency law. (Laws 1881, c. 148.) This assignment was declared invalid in May, 1886, as to a creditor who had not accepted its provisions, because it did not include the individual property of the members of the firm. It was partial, and not general; hence not such an assignment as contemplated or required by the insolvency act. Nor was it a good common-law assignment. *May* v. *Walker*, 35 Minn. 194, (28 N. W. Rep. 252.) Jenks, the assignee, had promptly qualified and taken possession of the assigned property. He had, upon the authority of the proper court, converted all of the assigned property into cash, and had distributed, as dividends among the creditors who had filed claims against the insolvents, nearly all of the money, when the opinion of this court in *May* v. *Walker* was filed. Steps were then taken by several creditors under the provisions of section 2 of chapter 148, which finally resulted in the appointment of a receiver of the estate, to whom Jenks, the assignee, turned over quite a sum of money, the sole remaining assets of the insolvent firm. Immediately upon his appointment as assignee, Jenks commenced to procure from the district court such orders as were deemed essential for the proper discharge of his trust, and in all matters pertaining to his duties pursued the usual course of law. September 22, 1885, the assignors, the wife of each joining in the deed, quitclaimed the real property in question to said Jenks, the deed being duly recorded upon the same day; but the same was without consideration, the object being to support and perfect the trust attempted to be created by the assignment before mentioned. The indebtedness of the insolvents exceeded $242,000, of which about $201,000 was duly presented by the creditors for allowance, and allowed by the assignee as claims against the estate. Among the creditors so presenting claims was this plaintiff, who, pending his action, filed the claims therein involved, and the same were allowed by the assignee, of which allowance the plaintiff was duly notified. Dividends were paid to those creditors who filed the releases provided for in section 10 of said chapter. The plaintiff did not file a release, and has received no dividend. On February 9, 1890, he caused an

execution to be issued upon his judgment, placed it in the hands of the proper officer, a levy was made upon the real property herein involved, and this action is in aid of such execution.

All of the proceedings subsequent to the execution of the deed of assignment were under the direction of the district court, and among other orders procured by the assignee was one authorizing him to sell the property in question with other property, and convert the same into money, that the proceeds thereof might be distributed among the insolvents' creditors. Notice of an application to the court for such order had previously been given, in the manner required by the court, to all parties interested, including plaintiff, by publication of the notice in certain newspapers, and by mail; a copy of the notice being duly mailed to plaintiff at his known place of residence. It was found by the court, however, that, although his place of residence was in the county in which all of these proceedings were had, plaintiff did not receive the notice so mailed, or any notice of the application to sell. The property mentioned in the order was sold by the assignee, being the then unconverted assets of the insolvents, to certain individual creditors of Walker, Judd & Veazie, upon terms set forth in an agreement known in this action as "Exhibit B," the price therefor being the sum of $100,000, less the amount of money—about $30,000—which had already been realized out of the assets and by the assignee. This sale was duly confirmed by the court, and on May 10, 1885, Jenks, as assignee, executed and delivered a deed thereof, in which, at the request of the purchasers, a corporation known as the "Marine Lumber Company" was named as grantee. This deed was duly recorded September 22, 1885. The purchasing creditors were allowed to retain out of the purchase price of said property, as a dividend of 40 per cent. upon their claims, about $35,000. There was paid to the assignee in cash between $20,000 and $30,000, but of the stipulated price the sum of $8,347.73 has not been paid. On May 22, 1888, the Marine Lumber Company conveyed the property to William Dawson and others, without any actual consideration being paid, and on the next day, in consideration of the sum of $20,000 paid to them by defendant O'Brien, the

property was conveyed by warranty deed to him by Dawson and his associates. O'Brien is in possession, claiming title under his said deed, which was duly recorded. The controversy between the parties is as to whether the property has been legally transferred to O'Brien, so that the lien of plaintiff's judgment, docketed January 8, 1886, did not attach, and, by reason thereof, the property subjected to levy and sale under execution.

In *May* v. *Walker, supra,* it was said that, as respects a creditor who would have nothing to do with this assignment, it was void, and he might disregard it; that it did not have the effect to place the property purporting to have been assigned, or its proceeds, in the custody of the law, so far as such a creditor was concerned. This proposition was repeated in *Re Walker,* 37 Minn. 243, (33 N. W. Rep. 852,) (the proceeding wherein a receiver was appointed for the insolvent firm,) but in neither of these cases was it intimated that the assignment was invalid for all purposes as to assenting creditors. It was expressly stated in the opinion in the proceeding last referred to that what property the receiver, when appointed, could claim as assets of the insolvents, or how those assets should be distributed, were matters for future consideration. In that same opinion the correctness of the rule that if creditors come in under an invalid or fraudulent assignment, and accept benefits under it, they will be estopped from afterwards attacking it as invalid, although declared inapplicable, was acknowledged. As did the respondents in that proceeding, these respondents invoke that familiar proposition as a primary reason for affirming the judgment in this case, which was in defendants' favor. Because of matters which were apparent upon the face of the instrument, the deed of assignment made by Walker, Judd & Veazie was declared void as to a creditor who repudiated and would have nothing to do with it. Creditors could treat it as a nullity, but they were not obliged to do so, and no one else could so treat it. By taking a benefit under it, they elect not to so treat it, upon the common principle that one may dispense with a provision for his own protection, if he so chooses. By coming in, creditors could express an election to accept its provisions and to acquiesce in its terms.

The pertinent inquiry now to be made is, did the plaintiff seek, accept, and obtain a benefit under the assignment which precluded him from disaffirming and repudiating it? We must hold that he did. Knowledge of the defect in the deed, apparent on its face, must be attributed to him when he made due proof of and filed his claim for allowance.. He then had a standing with the court and in the insolvency proceedings which entitled him to recognition in the steps to be taken subsequently. Had his claim been disallowed, in whole or in part, it was the duty of the assignee to notify him, (Laws 1881, c. 148, § 8;) and from an order of disallowance an appeal would lie. To be sure, he did not file a release, nor did he accept a dividend; but a creditor who has filed a claim which has been allowed may, under a certain condition of affairs, participate in a distribution of the assets, without filing such release. Id. § 10. A creditor may also participate when action is taken looking towards the removal of an assignee. Id. § 9. He was notified that his claim, made under section 11, "to obtain the benefits" of the insolvency act, was allowed; he has repeatedly permitted himself to be recognized as a creditor; has made no effort to retrace the steps whereby he secured the allowance of his claim, or to withdraw the same, as, possibly, he might have done by application to the court, which was exercising full jurisdiction and control in the matter; and we are unable to see why he has not sought, obtained, and accepted the provisions of the assignment. Whatever may be the legal *status* of creditors who have not availed themselves, in any manner, of the assignment or the benefits to be derived therefrom, the plaintiff, by making proof of his claim, delivering it to the assignee, and thereafter, although notified of the fact of its allowance, permitting it to stand as a proved-up claim against the estate, has, in law, accepted the instrument, and barred himself from disputing its validity, or from taking any action which will defeat its purpose as a transfer of the property in question to the assignee. *Cavanagh* v. *Morrow,* 67 How. Pr. 241; *Thompson* v. *Fry,* 51 Hun, 296, (4 N. Y. Supp. 166;) *Loomis* v. *Griffin,* 78 Iowa, 482, (43 N. W. Rep. 296;) *Eppright* v. *Kauffman,* 90 Mo. 25, (1 S. W. Rep. 736.)

The detailed statement of facts which we have made does not seem to have been demanded in order to arrive at our conclusion, but it suggests that there are additional reasons why the plaintiff ought not to succeed.

Judgment affirmed.