In the Matter of the Assignment of The George T. Smith Middlings Purifier Company. Appeal of George T. Smith from Order Adjudging Him Guilty of Contempt, etc.

|      |     |
|------|-----|
| 86   | 149 |
| 100  | 448 |
| 86   | 149 |
| 104  | 234 |
| 104  | 413 |

*Assignment for benefit of creditors—Fraud—Estoppel—Appointment of receiver—Contempt proceedings.*

1. The right of a creditor to complain of an assignment for the benefit of creditors in the execution of which there may have been fraud, and which may have been fraudulent as to creditors, may be lost by waiver or acquiescence. *Blake v. Hubbard*, 45 Mich. 4.

2. Where a creditor comes in under the assignment proceedings in such a way as to entitle himself to share in the dividends arising from the assets in the hands of the assignee, he waives all objection to his title to such assets.

   So *held*, where the president of a corporation, pursuant to a resolution of the board of directors, of which he was a member, executed an assignment of the corporate property for the benefit of creditors, which assignment he delivered to the assignees, who entered upon the discharge of the trust, after which he filed claims under the assignment proceedings as a creditor, and, after waiting for nearly a year,—during which time the assignees were closing out the estate, with his knowledge, and without objection on his part,—filed a bill to set aside the assignment because fraudulently made, and to restrain further proceedings thereunder; which action he is held to have estopped himself from taking.

3. Under the general supervisory powers of a court of chancery over assignment proceedings, it may proceed upon *petition* to the removal of the assignee, and may, in the *same proceeding*, appoint a receiver.

4. A finding in a proceeding for contempt under chapter 256, How. Stat., that the respondent has brought a suit against the receivers appointed upon the removal of assignees under an assignment for the benefit of creditors, and is prosecuting the same knowingly, and without leave of the court having control of the assignment, and that in so doing he has been and

is guilty of contempt of said court, and of its jurisdiction and authority, but which fails to find that such misconduct was calculated to or did defeat, impair, impede, or prejudice the rights or remedies of any party in said assignment proceeding, is sufficient to warrant an order restraining the further prosecution of said suit, and directing its discontinuance, but does not authorize the imposition of a fine, and imprisonment in default of its payment; but, on the failure of the respondent to comply with such order, he can, upon proper showing and finding of facts, be subjected to such penalties within the statute as the court may impose.[1]

Appeal from Wayne. (Hosmer, J.) Argued April 23, 1891. Decided May 21, 1891.

Contempt proceedings under How. Stat. chap. 256. Respondent appeals from order adjudging him guilty of contempt, which is modified and affirmed. The facts are stated in the opinion.

*Tarsney & Weadock,* for appellant.

*Thomas A. Wilson (E. F. Conely* and *Orla B. Taylor,* of counsel), for receivers.

LONG, J. The George T. Smith Middlings Purifier Company was a manufacturing corporation organized under the laws of this State, and had up to January 14, 1890, and for some years preceding that date, been engaged in business at Jackson, in this State.

On the 14th day of January, 1890, said corporation made an assignment for the benefit of its creditors to Rufus H. Emerson and Zenas C. Eldred. The assignees filed a bond, a list of creditors of said corporation, and

---

[1] For cases involving contempt proceedings, see *Scott v. Layng,* 59 Mich. 43; *Silver Plate Co. v. Schimmel,* Id. 524; *Chapel v. Hull,* 60 Id. 168 (head-note 4); *Railroad Co. v. Circuit Judge,* Id. 232; *Scott v. Circuit Judge,* 62 Id. 532; *Bagley & Co. v. Scudder,* 66 Id. 97; *Potts v. Potts,* 68 Id. 492; *Langdon v. Circuit Judges,* 76 Id. 358; *Latimer v. Barmore,* 81 Id. 592; *In re Wood,* 82 Id. 75; *Smith v. Circuit Judge,* 84 Id. 564.

an inventory of the property assigned, in the office of the county clerk of Jackson county. The matter of said assignment was removed from the circuit court for the county of Jackson to the circuit court for the county of Wayne, in chancery, and now remains in the court last named.[1]

Subsequent to such removal, Edmund W. Kittredge and Joseph Wilby applied by petition to the Wayne circuit court, in chancery, for the removal of said assignees, and the appointment of receivers of the property of said corporation in their stead. To this petition Rufus H. Emerson and Zenas C. Eldred made answer, and, upon the matter being presented to the circuit court for Wayne county, on the 24th day of April, 1890, the court made an order reciting that the said Emerson and Eldred assented to being removed as assignees of said corporation, and by the terms of said order said Emerson and Eldred were appointed receivers of all the lands, tenements, goods, property, and choses in action belonging to said George T. Smith Middlings Purifier Company, with all the powers of receivers in such cases, as well as all the rights and powers conferred upon them by the deed of assignment, and the statutes regulating assignments, and requiring them to give a bond of $500,000 for the faithful performance of their trust. This order appointing Emerson and Eldred receivers authorized them to make sale of the lands and property of said corporation in the manner therein specified.

On the 31st day of December, A. D. 1890, George T. Smith, as president and one of the stockholders of said George T. Smith Middlings Purifier Company, filed his bill of complaint in the circuit court for the county of Jackson, in chancery, against Rufus H. Emerson and

---

[1] See *Kittridge v. Circuit Judge*, 80 Mich. 200.

Zenas C. Eldred, in which Mr. Smith alleges, substantially, that the said Emerson and Eldred were claiming to be receivers of the George T. Smith Middlings Purifier Company, and were proceeding to sell the property, lands, and tenements belonging to said George T. Smith Middlings Purifier Company, and would sell the same on the 2d of January, 1891, unless restrained by an injunction, for which he prayed. Smith alleged that the said Emerson and Eldred were not receivers of said corporation; that the alleged assignment of the George T. Smith Middlings Purifier Company was ·wholly void, for the reason that it was not authorized by the stockholders of said corporation, and that such sale would create a cloud on the title to the land of said corporation; and in the bill so filed, Smith alleged that he filed said bill as one of the stockholders of the corporation, for the reason that the board of directors of the corporation pretended to be laboring under the erroneous impression that said Emerson and Eldred were legally appointed receivers. Thereupon Emerson and Eldred filed their petition in the Wayne circuit court, in chancery, in which they claimed to recite the history of the assignment matter, and in which petition they alleged that Smith did not obtain permission of the Wayne circuit court, in chancery, to file said bill, and prayed for an injunction to restrain the prosecution of said suit, and that appellant be punished for contempt for having filed said bill of complaint without permission. To the petition, so filed by Emerson and Eldred, Smith filed his answer, setting forth substantially the history of the litigation, and some of the reasons upon which he based his action for filing his bill of complaint, and in which answer he gave his reasons why he should not be punished for contempt.

The matter came on to be heard on the 19th day of January, A. D. 1891, before Hon. George S. Hosmer,

one of the circuit judges for Wayne county, who adjudged and found Smith guilty of contempt for bringing said suit without first having obtained leave of the circuit court for the county of Wayne, in chancery, and ordered Smith to discontinue said suit within 15 days from the date of said order, and pay in to the register of said court the sum of $250, and, in default of the payment of such fine, that he be committed to the county jail for the county of Wayne, for the period of 90 days from the date of said order, unless such fine was sooner paid. After the rendition of said order adjudging Smith guilty of contempt, Smith sought by *mandamus* to have said order set aside as illegal, which this Court refused to grant. *Smith v. Wayne Circuit Judge*, 84 Mich. 564. Subsequent to the refusal of this Court to consider the question of the legality of said order upon *mandamus,* this appeal was taken from the order of contempt.

In the matter of the *mandamus* proceedings it was held that this Court would not inquire into the validity of the assignment on *mandamus.* It was there said that—

"The forum in which the relator must question the validity of the assignment, if at all, is the court having control and jurisdiction of said matter, and it would be contrary to every principle of law to permit him to attack it elsewhere."

The proposition of law is not disputed which requires that where a receiver has been legally appointed, and has duly qualified, and is acting as such, before suits are instituted against him as such receiver permission of the court must be first obtained. While this is admitted, it is also contended that, where persons not legally appointed receivers are claiming to be and acting as such, there is no law which requires as a condition precedent, the permission of any court to authorize necessary suits to prevent such unauthorized persons from interfering with,

handling, or disposing of property in which they have no legal interest or right; and that if such suit is so instituted in good faith, even though it should ultimately turn out that the receiver was lawfully appointed, the person bringing such suit should not be punished for contempt. It is also contended that Emerson and Eldred were not legally appointed receivers in the matter of the assignment, and that no one is under any obligation to treat them as legally appointed receivers or officers of the court; but that any one having an interest in the subject-matter of the assignment may pursue his own course as to the form, method, and tribunal in which he may bring suit against them, without first having asked permission from the court so to do.

It is claimed by the defendant that the board of directors of the Smith Middlings Purifier Company had no authority from the corporation to direct the assignment to be made, and that the court below was in error in not permitting the defendant to introduce evidence to substantiate the allegation in the answer that the board of directors were guilty of conspiracy and fraud in making the assignment in the matter of the Smith Middlings Purifier Company.

It is further contended that the receivers were not legally appointed by the court, for the reason that such appointment was made upon petition, and not by bill, filed in the proper court, carrying with it the usual subpoena, making all necessary parties parties thereto, either as complainant or defendant; that, by the filing of the petition for the appointment of receivers, every stockholder of the corporation, and every officer thereof, and all the creditors of the assigned company, and every claimant against the assignor, were left out of the proceeding, and no one of them had a voice in the removal of Emerson and Eldred as assignees, and their appoint-

ment as receivers; and that, therefore, the defendant had the right to file his bill in the circuit court for Jackson county without asking leave of the circuit court for the county of Wayne.

It appears that, at the time the assignment was made by the Smith Middlings Purifier Company, George T. Smith, the defendant here, was a member of the board of directors and the president of the company, and that he made and executed said assignment as president of the company, and delivered the same to the assignees, Emerson and Eldred; that they accepted the same, and entered upon the discharge of the trust thereby created; and that they took an inventory of the property, and gave the requisite bond under the statute; that afterwards the matter of the assignment was duly removed from the county of Jackson, where the assignment was made, to the county of Wayne, where it has since been pending; that on the 24th day of April, 1890, Emerson and Eldred were removed as assignees upon the petition of Edmund W. Kittredge and Joseph Wilby, creditors of the Smith Middlings Purifier Company, and that they were thereupon appointed receivers upon the same petition filed for their removal as assignees, and that they entered upon the discharge of that trust immediately thereafter, and have since continued in the discharge of the trust thereby created.

It appears further that on the 12th day of April, 1890, George T. Smith, the defendant in the present case, filed a claim in said matter against the Smith Middlings Purifier Company for $393,166.66, which was verified by his oath; that on the 14th day of April, 1890, a claim for $266,000 was filed in behalf of the Consolidated Middlings Purifier Company, which was also verified by Smith as president and treasurer thereof; that on the last-named date he also filed a claim as sole-heir of Henry L. Smith,

for $697.40, which was also verified by his oath; that after the filing of said claims Emerson and Eldred caused notice of contest of each to be served, as provided by the statute regulating assignments, all of which were undisposed of at the time of the filing of said petition.

Since the appointment of the receivers they have been carrying on the business carried on by the assignor before said assignment, under the direction of the circuit court for the county of Wayne, in chancery, and by like authority have sold real estate of said assignor, which sales have been confirmed by the court, and they have also been collecting and adjusting the debts and obligations due the assignor, all of which was known to George T. Smith. On November 24, 1890, an order was made in such matter authorizing the receivers. to sell certain real estate, consisting of the shops of the assignor, for not less than $65,000, and on the 2d day of January, 1891, said property was sold in pursuance of said order for that amount.

The assignment was made under the provisions of chapter 303, How. Stat., entitled " Voluntary Assignments for the Benefit of Creditors," and conveyed to the assignees all of the estate and property of the assignor not exempt from execution, unless there was fraud in the matter of the assignment, or in the execution of said trust, and the title still rests in them, and they can only be divested of their office upon failure to comply with the provisions of that chapter, or having failed or neglected to promptly and faithfully execute said trust within the meaning of section 6 of that act. It is not claimed that Emerson and Eldred have failed to comply with the provisions of the act, or that they are neglecting to execute the trust. The only ground of complaint relating to the matter of the assignment is that there was conspiracy and fraud in procuring the assignment to be made.

We need not consider upon this record the question of the conspiracy and fraud in making the assignment, for the reason that George T. Smith, the defendant, is not now in a position to question the validity of that proceeding. He was one of the board of directors of the assignor, its president, and, as such, executed the assignment which he now attempts to set aside upon the ground of conspiracy and fraud. If this were not sufficient to estop him from making this claim, his action after the assignment was made, in filing claims in the matter of the assignment, would certainly have this effect. It appears from the record that the resolution was adopted by the board of directors, directing the assignment to be made, and directing the president and secretary or either of them to execute the same in the name of the company, and, in pursuance of this resolution of the board, George T. Smith, acting as president of the company, did make and execute it. Though there may have been fraud in its execution, and it may have been fraudulent as to creditors, such an assignment is not so absolutely void that the creditors' right to complain of it may not be lost by waiver or acquiescence. *Blake v. Hubbard,* 45 Mich. 4. Smith not only executed the assignment, and delivered it to the assignees, and filed claims therein as a creditor, but has waited for nearly a year, knowing of the proceedings taken by the assignees and receivers in the settlement of the estate, and of the conduct of the business affairs of the corporation, and the orders of the court made therein, and until the filing of his bill in the Jackson circuit court in December, 1890, has never, so far as appears from this record, objected to any of the proceedings taken therein. It would be contrary to every rule of equity to permit Smith now to attack the assignees in their office, and upon his bill to set aside the assignment and the appointment of Emerson and Eldred as receivers. It is

well settled that, where one comes in under the assignment proceedings in such a way as to entitle himself to share in the dividends arising from the assets in the hands of the assignees, he waives all objection to the title of the assignees to such assets. *Littlejohn v. Turner,* 73 Wis. 121 (40 N. W. Rep. 625); *Copper Co. v. Babbitt,* 74 N. Y. 395; *Cavanagh v. Morrow,* 67 How. Pr. 242; *May v. Wannemacher,* 111 Mass. 202; *Pierce v. O'Brien,* 129 Id. 314; *Jones v. Tilton,* 139 Id. 418 (1 N. E. Rep. 741); Burrill, Assignm. (5th ed.) 438, 465, 466.

In *Frelinghuysen v. Nugent,* 36 Fed. Rep. 229, it was held by Mr. Justice Bradley that—

"The creditors who have voluntarily presented their claims before an assignee, without questioning the validity of the assignment, are thereafter estopped from disputing its validity."

This seems to be the general rule, and it must be held that George T. Smith is not now in a position to attack these proceedings.

We cannot assent to the position taken by defendant's counsel, that the court had no authority to appoint Emerson and Eldred as receivers, because the circumstances did not authorize the appointment under How. Stat. § 8744, and because no bill was filed in conformity with said section, and claiming that the court had no power to appoint under the petition.

The matter of this assignment was before this Court in *Kittredge v. Circuit Judge,* 80 Mich. 200, on application for *mandamus* to compel its removal to the Wayne circuit. After referring to various sections of the assignment law, Chief Justice CHAMPLIN, speaking for the Court, said:

"From these provisions it is gathered that it was the intention of the Legislature to place common-law assignments fully under the control and supervision of the cir-

cuit courts, in chancery. From the time of the filing of the assignment in the office of the clerk of the court it may be said to be a proceeding pending in that court for all the purposes of the act. The authority of the court to exercise its supervisory powers is called into being whenever the court is applied to by any one authorized by the act to invoke such powers, and then the power of the court, which was before dormant, is called into activity, and its jurisdiction fully attaches to the assignment, and all matters connected therewith. It is then a civil proceeding pending in the circuit court, and is subject to be transferred under the statute first above referred to."

It appears that Kittredge and Wilby filed a petition as creditors, asking the removal of Emerson and Eldred as assignees, and praying for the appointment of receivers. When this petition was filed, it called into activity the supervisory powers of the court, and its jurisdiction fully attached to the assignment, and all matters connected therewith, among which was the appointment of the receivers for the protection of the assets of the assignor in the interest of the creditors. At the time the appointment of the receivers was made, the property and assets of the corporation were in the hands of the assignees, who were subject under the statute to the supervisory powers of the court. Section 8749, How. Stat., gives the circuit court in chancery supervisory control over all matters arising under such assignment proceedings, except as otherwise provided in the act. The section referred to by counsel for the defendant provides that any person interested may file a bill for the enforcement of the trust. Sections 8739 and 8741 of the act were amended by Act No. 215, Laws of 1889 (3 How. Stat. pp. 3786, 3787). Section 8739, as amended, provides for proceedings by petition for the removal of the assignee, and was intended to facilitate proceedings in assignment cases.

We think, under the general supervisory powers of a court of chancery over such matters, the court could pro-

ceed upon petition to the removal of the assignees, and in the same proceeding, for the interest of the creditors, could appoint receivers. Section 6624, How. Stat., provides that each circuit court shall have the power to appoint receivers in all cases pending in chancery, when such appointment is allowed by law, as well in vacation as during the session of the court; and by the next section it is provided that such application for appointment may be made to the circuit judge at chambers, and shall be heard under such regulations as may be by general or special rules prescribed.

But the rights of the parties need not rest alone on the construction of this statute and the power of the court in the premises. George T. Smith rested on his rights, if he could assert such rights, from April 24, 1890, to December 31, 1890, before any action was taken by him to set aside the proceedings for the appointment of receivers. In the mean time the receivers had proceeded with the settlement of affairs of the corporation; sold real estate; defended suits brought against them; and to hold now that they were improperly appointed would involve rights of other creditors, and jeopardize claims which have been settled by such litigation. George T. Smith knew of these proceedings, and has, we think, rested upon his rights, if he had any such rights, an unreasonable length of time before attempting to assert them. He could not, for eight months, stand by in the face of such litigation by other parties in the matter of this estate, see their rights litigated and settled by the courts, after himself making the assignment and filing claims as a creditor therein, and then come into a court of equity and ask its aid to set aside all these proceedings, and set aside sales made by the receivers, and thus jeopardize the claims of other creditors. What is reasonable time must depend upon the circumstances surround-

ing the case. Did it not appear that Smith must have been cognizant of all that was going on in the matter of the estate, and knew that rights of other creditors were being litigated and settled, upon the supposition that the receivers were properly and lawfully appointed, perhaps waiting the eight months, when no other rights had grown up in the mean time, would not have been unreasonable; but he had filed claims with Emerson and Eldred as assignees to the amount of over $600,000, and immediately thereafter these parties were removed and appointed as receivers. They had entered a contest as to his claims, and these cases were then pending, and yet he waited until the last of December before asking the removal of the receivers. He is now estopped from setting up this claim, as well as the claim that there was fraud in the matter of the assignment.

The question of the right of the court, under the facts found, to impose the fine and imprisonment, yet remains to be disposed of. Chapter 256, How. Stat., relates to proceedings as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions. Section 20 of that chapter (section 7276) provides that—

"If the court shall adjudge the defendant to have been guilty of the misconduct alleged, and that the misconduct was calculated to or actually did defeat, impair, impede, or prejudice the rights or remedies of any party in a cause or matter depending in such court, it shall proceed to impose a fine, or to imprison him, or both, as the nature of the case shall require."

The finding of the court recites that—

"The respondent brought his suit against the said receivers, and is prosecuting the same knowingly, and without leave of this court, and that in so doing the said George T. Smith has been and is guilty of a contempt of this court, and of its jurisdiction and authority."

86 MICH—11.

There is no such finding, as required by the statute above cited,—

"That the misconduct was calculated to or actually did defeat, impair, impede, or prejudice the rights or remedies of any party in a cause or matter depending in such court."

The facts and circumstances shown upon the record are sufficient to warrant the order that the respondent be restrained from further prosecuting this suit in the Jackson circuit court, in chancery, and that he discontinue the suit, and discharge the *lis pendens;* but there is no such finding as would authorize the court to impose the fine, and imprisonment in default of the payment of the fine. If the respondent does not comply with the order of the court in discharging the suit, he could then, upon proper showing, be subjected, if the proper facts are found, to such penalties within the statute as the court might impose. As the facts found do not warrant that part of the order imposing fine and imprisonment, it must be set aside; the decree in other respects to stand and be enforced.

Claim is made that the defendant should be punished with costs as for a vexatious appeal. We do not think the questions raised so easy of solution that it can be said the appeal was taken for vexation and delay, and shall not award costs for such purpose.

The decree, as modified in accordance with these views, will be affirmed. No costs will be awarded to either party.

The other Justices concurred.