[L. A. No. 1212. In Bank.—August 29, 1904.]

ELIZABETH C. LACY and ANNE LACY, Executrices of Will of B. T. Lacy, Deceased, Respondents, v. C. E. GUNN, Appellant.

MINING CORPORATIONS—DISPOSITION OF MINING GROUND—RATIFICATION BY TWO THIRDS OF STOCKHOLDERS—CONSTITUTIONALITY OF STATUTE —RULE OF PROPERTY.—Section 1 of the statute of April 23, 1880, in relation to mining corporations, which requires a ratification by two thirds of the stockholders in order to insure the validity of any disposition of its mining ground, is constitutional, and its validity has become a rule of property under the previous decisions of this court affirming it.

ID.—CONSTRUCTION OF STATUTE—BENEFIT OF ACTUAL STOCKHOLDERS— ASSIGNMENT FOR BENEFIT OF CREDITORS—OWNERSHIP OF STOCK BY DIRECTORS.—The statute of April 23, 1880, is to be construed as intended primarily for the benefit of actual owners of stock, rather than creditors of the corporation, and the consent of two thirds of such actual owners, and not of those who appear to be such, is required to validate an assignment for the benefit of the creditors of the corporation. If the directors consenting to such assignment then owned two thirds of the stock, such consent, though given in their capacity as directors, is, at least as against such creditors, equivalent to a subsequent ratification.

ID.—ASSIGNMENT PRIOR TO JUDGMENT.—Where the assignment for the benefit of creditors of the corporation antedates a judgment against the corporation, if the assignment is valid, the judgment became no

lien upon the property, and a deed under the assignment is a complete defense to a sheriff's sale under the judgment.

ID.—WAIVER OF OBJECTIONS BY CREDITORS TO ASSIGNMENT.—As a general rule, apart from the provisions of the code as to the validity of an assignment for the benefit of creditors, creditors who prove and file their claims thereunder in the manner prescribed by law thereby waive all objections to the regularity of the assignment and to the title of the assignee to the assets.

ID.—ESTOPPEL AS TO MINING GROUND.—Though creditors who have filed their claims are not estopped to deny the validity of an assignment by the corporation of its mining ground for their benefit during such time as it may be unratified by its stockholders, yet if they allow their claims to remain on file until after a sufficient ratification, the waiver and estoppel to deny its validity thereafter is the same as if it had been originally authorized by two thirds of the stockholders.

ID.—WAIVER AND ESTOPPEL AS TO JUDGMENT LIEN—RATIFICATION OF ASSIGNMENT—CONVEYANCE OF MINING GROUND BY ASSIGNEE.—Where the assignee of certain claims of creditors, which were duly proved and filed under the assignment for the benefit of the creditors of the corporation, sued upon the claims, and obtained a judgment, which was docketed after the date of the assignment, and the assignee subsequently treated the claims as unsecured and remaining on file as such until after a formal ratification of the assignment by the stockholders, and thereafter until after the assignee of the corporate property, who had remained in possession of the mining ground from the date of his appointment, conveyed it to a purchaser, any claim of lien of the judgment was thereby waived as against the purchaser, and the claimant thereof was estopped to deny the purchaser's title or to enforce the claimed lien by a subsequent sheriff's sale of the mining ground.

ID.—EFFECT OF SUIT UPON CLAIMS—RIGHT OF CREDITORS TO SUE.—The suit on the claims cannot be considered as a repudiation or withdrawal of the claims. There is nothing forbidding such suit in the statute or in the assignment; and the creditors had the right to sue on the claims after they were filed and allowed, and to collect the judgment recovered out of any property not covered by the assignment.

ID.—RIGHTS OF PURCHASER—INADEQUACY OF PRICE.—The purchaser at the assignee's sale had the right to take the conditions existing at the time of the purchase as the measure of his rights and of the claims and rights of other parties to the assignment; and having presumably made the purchase on the faith of those conditions, the other parties to the assignment should not be allowed to change their relations to his prejudice. The fact that he obtained the property at a low or inadequate price cannot justify the court in treating the purchase as invalid.

APPEAL from a judgment of the Superior Court of Kern County. M. L. Short, Judge presiding.

The facts are stated in the opinion of the court.

D. E. Alexander, for Appellant.

S. N. Reed, Charles T. Howland, and J. W. McKinley, for Respondents.

SHAW, J.—The defendant, C. E. Gunn, within sixty days after its rendition, appealed from the judgment in favor of the plaintiffs, and he brings up the evidence by bill of exceptions. The complaint is in the ordinary form of an action to quiet title. The answer avers title in the defendant, Gunn. The action was begun in the name of B. T. Lacy, who has since died, and the present respondents have been substituted in his stead.

The evidence shows that both the plaintiffs and the defendant, Gunn, claim through the Amalie Mining Company, and the question which has the better title depends on the validity of the respective conveyances by which each claims to have acquired the title of that company.

The plaintiffs claim title by virtue of a judgment, execution sale, and sheriff's deed. On May 9, 1898, B. T. Lacy recovered judgment in the° superior court of Kern County against the Amalie Mining Company for the sum of $7,909.56, which was then duly docketed, and became a lien on the real estate of said company within the county. Execution was duly issued thereon on April 27, 1899, and, in virtue thereof, the sheriff sold the mining claim in controversy to B. T. Lacy, the plaintiff in the action, for seven thousand five hundred dollars, and no redemption being made, a deed was executed to the purchaser on October 2, 1900, in pursuance of the sale.

The claim of the defendant, Gunn, is upon a deed from J. B. Ferris as assignee of the Amalie Mining Company under an assignment made by that company for the benefit of its creditors. The assignment, covering the property in question and other property of the company, was executed to the sheriff of the county, as provided in section 3449 of the Civil Code. It is dated April 8, 1897, and was duly recorded on April 9, 1897. By the usual proceedings, the creditors of

the company met and elected J. B. Ferris assignee, to whom, on April 19, 1897, the sheriff conveyed the property. The assignee took possession of all the property, and held the property in question here until November 16, 1898, when as such assignee he sold and conveyed it to Gunn for $3,514.82.

The assignment antedates the judgment under which plaintiffs claim, and therefore, if the assignment is valid, the plaintiffs' judgment did not become a lien on the property, and the deed of the assignee transferred the title to Gunn and constitutes a complete defense to the action.

The respondents claim that the assignment for the benefit of creditors is void. The principal ground for this contention is, that the property in question constituted the mining ground of the Amalie Mining Company, a mining corporation, that the assignment was neither ratified nor authorized by the holders of two thirds of the stock of the corporation, and hence that it is void under section 1 of the act of April 23, 1880. (Stats. 1880, p. 131.) That section is as follows: "It shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain, in any way, any additional mining ground, unless such act be ratified by the holders of at least two thirds of the capital stock of such corporation. Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution duly passed at a stockholders' meeting called for that purpose."

The appellant claims that the statute is unconstitutional, and cites the case of *Krause* v. *Durbrow,* 127 Cal. 682, in support of his contention. That case holds that section 3 of the act is unconstitutional on the ground that it is an attempt to enact a law for a mining corporation different from that prescribed for other corporations, with respect to a subject which, in its relation to a mining corporation, possesses no natural or intrinsic quality different from that which it possesses in its relation to other corporations. Section 3 prescribes rules for the conducting of elections at stockholders' meetings of mining corporations different from those prescribed for corporations generally. It was held that no reason existed for making a law for such elections with regard to mining corporations different from that for other corpora-

tions, and hence that it was special legislation on a subject as to which a general law could be, and had been, made applicable. It does not follow that, because no reason could be perceived for a classification of such corporations for the purpose of making rules for the conduct of elections, there is likewise no reason for a classification with respect to the method of selling and disposing of the property of such corporations which constitutes its real capital,—namely, its mining ground. We do not consider it necessary to enter into a discussion of this point, for the reason that the question would seem to be foreclosed by the previous decisions of this court recognizing the validity of the first section of the act and enforcing its provisions. While its constitutionality has not been discussed, section 1 of the act has been treated as valid and its provisions enforced by the court in Bank in *McShane* v. *Carter*, 80 Cal. 310; *Pekin Min. Co.* v. *Kennedy*, 81 Cal. 363; and *Johnson* v. *California Lustral Co.*, 127 Cal. 283. In *Granite Gold Min. Co.* v. *Maginness*, 118 Cal. 137, this section, although strictly construed, was recognized as a valid statute. These decisions have been generally considered and acted on as judicial recognitions of the validity of the section, and it must now be considered as a rule of property. Even if the question were an open one, we are not prepared to hold that there is not a natural or intrinsic distinction or difference between the mining property of mining corporations, with respect to the advisability of investing in the directors the absolute power of acquiring or disposing of the same, and the ordinary property of those and other corporations, which would justify a law, applicable to that class of corporations and property, different from the general rule. We must therefore decide the case upon the theory that the section quoted is a valid law.

We think, however, that under the circumstances of this case the plaintiffs cannot question the validity of the assignment so far as it affects the mining property. Section 3458 of the Civil Code declares that "An assignment for the benefit of creditors must be in writing, subscribed by the assignor, or by his agent thereto authorized in writing," and section 3459 is as follows: "Unless the provisions of the last section are complied with, an assignment for the benefit of creditors is void against every creditor of the assignor not assenting thereto."

Aside from the provisions of the code, there is a general rule that a creditor who files his claim under an assignment, in the manner prescribed by law, thereby waives all objections to the regularity of the assignment and to the title of the assignee to the assets. (*Littlejohn* v. *Turner,* 73 Wis. 113; *Olson* v. *O'Brien,* 46 Minn. 87; *Boynton F. Co.* v. *Sorenson,* 80 Wis. 596; *Lawson* v. *Stacy,* 82 Wis. 304; *Chafee* v. *Bank,* 71 Me. 526;[1] *Jones* v. *Tilton,* 139 Mass. 418; *Appeal of Smith,* 86 Mich. 158.) In *Olson* v. *O'Brien,* 46 Minn. 87, the court says: "Whatever may be the legal *status* of creditors who have not availed themselves in any manner of the assignment, or the benefits to be derived therefrom, the plaintiff, by making proof of his claim, delivering it to the assignee, and thereafter, although notified of the fact of its allowance, permitting it to stand as a proved-up claim against the estate, has, in law, accepted the instrument, and barred himself from disputing its validity, or from taking any action which will defeat its purpose as a transfer of the property in question to the assignee." And in *Appeal of Smith,* 86 Mich. 158, it is said: "It is well settled that where one comes in under the assignment proceedings in such a way as to entitle himself to share in the dividend arising from the assets in the hands of the assignees, he waives all objections to the title of the assignees to such assets." That B. T. Lacy, the original plaintiff in this action, occupied the position of an assenting creditor is beyond question. He was the assignee of a number of the creditors of the company, and the judgment under which he bought the property at sheriff's sale was for the recovery of the amounts due him on the claims so assigned. The evidence tends strongly to establish that he was a mere assignee for collection. At all events, he stands in no better position on this question than his assignors, for he unquestionably took with full notice of all the facts with respect to their assent to the assignment. The findings and evidence show that each of these creditors, before the assignment to Lacy, upon receiving notice from the sheriff of the time and place of the meeting to elect an assignee under the assignment, as provided in section 3449 of the Civil Code, made due proof of his claim to the sheriff, attended the meeting of the creditors, participated in the election of an assignee, and thereafter

[1] 35 Am. Rep. 345.

filed his verified claim with the assignee, as required by section 3468 of the Civil Code, and procured the allowance thereof. So far as the record here shows, these claims still remain on file with the assignee, and are entitled to share in any dividend that may be forthcoming out of the proceeds of the sale to the defendant. These proceedings by the plaintiffs' assignors, in recognition and acceptance of the assignment, were sufficient to make them assenting creditors thereto under the statute and principles aforesaid. The plaintiff received the assignment of the claims with full knowledge of the fact that they had been so filed and allowed and that they remained on file, and with that knowledge he allowed them to remain on file after he secured his judgment and until the time of the trial. Whatever force would attach to the fact that these claims were on file and were entitled to share in the dividends would be as effective against the plaintiff after he had thus received the assignment of the claims as it would be against the original holders prior to the assignment.

We think, however, that, as to the mining property, the deed of assignment, so long as it lacked the assent or ratification of the necessary stockholders, was void as against the corporation itself, and hence no estoppel to dispute its validity could arise against a creditor during such time as the transfer remained invalid as against the corporation. The effect of the contrary doctrine would be, that neither the assenting creditors by their execution sale, nor the assignee by sale under the assignment, could reach this part of the property to apply it to the payment of the debts, and, therefore, if all the creditors should file their claims under the assignment in such a case, in order to share in the proceeds of other property included in the assignment, as they would have the right to do, the insolvent corporation could hold this mining property free from the demands of any and all creditors. This would be conclusive of the case if nothing further appeared. But the additional facts and subsequent events justify a different rule. It appears that the assignee had possession of the mining property immediately after his election, and continued to hold possession thereof until the sale to the defendant. The plaintiff's judgment was docketed on May 9, 1898, and thereupon it became a general lien upon all property of the corporation subject to execution. The plaintiff,

however, took no steps whatever to enforce the judgment against this or any other property, but allowed the same to remain passive for almost a year. In the mean time, on November 7, 1898, the stockholders ratified the assignment, and the deed constituting such ratification was recorded November 25, 1898. Nine days after the ratification the assignee sold the property to the appellant. The sale purports to be a sale of the entire interest therein. There is nothing to indicate that it was a sale subject to plaintiffs' judgment lien, and it is apparent from the entire proceedings in the case that it was not so understood. The deed of the assignee to the defendant, Gunn, was duly recorded on November 25, 1898. No proceedings to enforce the judgment were taken until April 27, 1899, at which time Lacy, the judgment plaintiff, caused the execution to issue on which the sheriff's sale to him was made. During all this time following the sale to the defendant, Gunn, and until the issuance of the execution, the judgment creditor, Lacy, did nothing to withdraw the creditor's claim from full participation in the proceeds of the property sold by the assignee; but, on the contrary, kept the claims on file as unsecured claims, to share fully in the proceeds of the mining property and other assets.

The suit on the claims cannot be considered as a repudiation of the assignment or a withdrawal of the claims. There is nothing forbidding such suit, either in the statute or in the assignment, and therefore the creditors had the right to sue on the claims after they were filed and allowed, and to collect the judgment recovered out of any property not covered by the assignment. There is no inconsistency in the contemporaneous prosecution of the two remedies, unless there is an attempt to seize the assigned property on the execution. (*Williams* v. *Cox,* 78 Ala. 325; *Lawrence* v. *McVeagh,* 106 Ind. 210; *Trotter* v. *Williamson,* 22 Ky. (6 T. B. Mon.) 38; *Rice* v. *Catlin,* 14 Pick. 221; *Nonantum W. Co.* v. *Holliston Mills,* 149 Mass. 359; *Morehead* v. *Adams,* 18 Neb. 569; *First Nat. Bank* v. *Newman,* 62 N. H. 410; *Thompson* v. *Reeves,* 26 Or. 46; *Kingsbury* v. *Deming,* 17 Vt. 367; *Foster* v. *Deming,* 19 Vt. 313; *Limbocker* v. *Higginbotham,* 52 Kan. 696; *Detroit Stove Works* v. *Osmun,* 74 Mich. 7; *Smith* v. *St. Paul etc. Ins. Co.,* 56 Minn. 202.) There may be very good reasons for such a suit, aside from the intention to repudiate or with-

draw from the assignment proceedings,—as, for instance, to prevent the bar of the statute of limitations.

The purchaser at the assignee's sale had the right to take the conditions existing at the time of his purchase as the measure of his rights and of the claims and rights of other parties to the assignment, and having made the purchase, presumably on the faith of these conditions, the other parties to the assignment should not be allowed to change their relations to his prejudice. By continuing to maintain the relation of an unsecured creditor, and keeping his claims on file to the full amount thereof, after the ratification by the necessary stockholders had made the assignment valid as to the mining ground, and until the sale to the defendant, and thus keeping himself in a position to share fully in the proceeds of the sale to defendant, the plaintiff became estopped to deny the title thus transferred to defendant, as fully as he would have been estopped if the assignment had been originally authorized by the two thirds of the stockholders.

If there was anything in the nature of a claim that the defendant had purchased the property subject to the lien of the plaintiffs' judgment, this estoppel, of course, would not apply to the case; but, as before stated, it is not claimed upon the face of this record that there was any such understanding, and the contrary appears to be the fact. If upon a new trial it shall be shown that there was such an understanding, or possibly if for any reason it should appear that the defendant's purchase was unfair or inequitable as against the creditors, we do not wish to be understood as holding that the plaintiff in that case would be estopped from asserting title to the property as against the defendant.

It is suggested that to permit the appellant's purchase from the assignee to stand would be inequitable on account of the low price paid, and the fact that appellant now owns almost all of the stock. It is settled, however, that inadequacy of price alone is not sufficient to justify a court in declaring a sale fraudulent. We are of the opinion that, as against the plaintiffs, the assignment and the sale by the assignee to the defendant must be considered as valid, and that the findings and judgment holding it void are not sustained by the evidence. We cannot, however, direct the court below to enter judgment in favor of the appellant. There is a general find-

ing that he has no interest in the property, and hence a new trial is necessary.

There is evidence tending to show that the directors who instructed the president and secretary to make the assignment were, at the time, the actual owners, as distinguished from those who appeared to be such on the books, of more than two thirds of the stock. The resolution authorizing the assignment was passed on April 7, 1897. The evidence shows that the directors who were present at the meeting and assented to this resolution were on April 9, 1897, the owners of more than two thirds of the stock. We cannot say from this statement that they were the owners of such two thirds on April 7th, at the time the resolution was passed, though there may be a strong inference to that effect. Hence, we cannot disturb the finding that the assignment was not ratified until after the judgment in favor of Lacy was docketed. But, in view of the probability of a new trial, we think it proper to say that the statute of 1880 was enacted primarily for the benefit of stockholders rather than creditors, and that a previous consent or direction by two thirds of the stockholders, although purporting to have been made in their capacity as directors, is, at least as against creditors, equivalent to a subsequent ratification, and that it is the actual owners of the stock, and not those who appear to be so, who are under the protection of the statute, and whose ratification or consent is required. There are some other points presented in the case, but in view of the conclusions we have reached as above we do not think it necessary to consider them.

The judgment is reversed and a new trial ordered.

McFarland, J., Angellotti, J., Henshaw, J., Lorigan, J., and Van Dyke, J., concurred.