FRANKLIN N. BILLINGS, Appellant, *v.* FREDERICK M. BILLINGS, HENRY W. HALLICK and JAMES R. BOLTON, Respondents.

The question of fraudulent interest, is a question of fact.

In an assignment for the benefit of creditors, a power to the assignee to sell on credit, is presumptive evidence of fraud.

Where the law declares certain facts conclusive evidence of fraud, a verdict against such conclusion, will be set aside; but where the facts are declared merely presumptive evidence of fraud, the jury may find against such presumption.

An insolvent debtor may prefer certain creditors, in an assignment of his property.

APPEAL from the Fourth Judicial District.

This was an action to test the validity of certain assignments, for the benefit of creditors; by deed, bearing date Sept. 3d, 1850, between B. Simmons and W. H. Stowell, partners, of the first part, and the respondents, (defendants in the action,) of the second part. Simmons & Stowell, after reciting their inability to pay their partnership debts, and their desire to make a fair distribution of their property, in consideration of the premises, and of one dollar, granted, bargained, sold, assigned, &c., to the defendants, and their heirs and assigns forever, all the lands, tenements, and hereditaments lying in the State of California, and all the goods, chattels, steamboats, merchandise, debts, choses in action, property, and effects of every description, of the said Simmons & Stowell, more particularly described in the schedule A., thereto annexed, in trust and to the uses following, to wit; that the defendants should take possession of the lands and other property assigned, and sell and dispose of the

same, either at public auction, or private sale, for such prices and on such terms, either for cash or on credit, as in their judgment might appear most for the benefit of the parties concerned, and convert the same into money; and should collect the said debts, &c.; and execute all necessary and proper deeds, bills of sale, releases, &c.; and with the proceeds, after paying the expenses of making and carrying into effect the assignment, first, to pay in full, to George Howard, $3000; to Flint, Peabody & Co., $3000; to Wells & Co., $2000; with legal interest from the date of the assignment; said debts being mentioned in schedule B. Secondly, after paying in full said debts in schedule B., then to pay all sums due on deposits made with the firm of Simmons, Hutchinson & Co., as well when said firm was composed of the assignors, and John F. Pope and Titus Hutchinson, as when composed of the assignors alone, (except such deposits as, by agreement, were to bear interest;) and all sums due or to become due the owners of the steamer Gold Hunter; said debts—which were set forth in schedule C.—to be paid in full, if the assets proved sufficient, otherwise *pro rata.* Thirdly, with the residue of the proceeds, if any, to pay, *pro rata*, all other partnership debts against said firm of Simmons, Hutchinson & Co., as well while composed of the said former, as the present partners. Lastly, after paying all said debts and demands, to return the surplus, if any, to the assignors, their executors, administrators, or assigns. And for the better execution of said trusts, Simmons & Stowell, by said deed, constituted the said Frederick Billings their and each of their attorney, irrevocable, with power of substitution and revocation, with full authority to do any and all necessary acts in their names; and covenanted with the defendants to execute, upon request, all such further assignments and deeds as might be necessary to carry into effect the objects of the indenture.

On the same day, Simmons executed his separate deed of conveyance and assignment to the defendants of all those lands, tenements, hereditaments, and personal property, &c., in the State of California, more particularly described in the schedule annexed, in trust to sell and collect, &c., (as in the first assignment;) and with the net proceeds, first, to pay in full all the individual debts of Simmons; second, to pay the partnership

debts mentioned in the first assignment, in the order thereby provided.

On the same day, Stowell also executed a like deed of assignment of his individual property, as described in a schedule annexed, to the defendants, upon similar trusts, &c.

The deeds were recorded the next day after their execution.

On the 9th of October, 1850, (Simmons having died,) John W. Geary obtained judgment against Simmons, as surviving partner, for $65,100, and issued execution, and proceedings supplementary to the execution were had, pursuant to the statute; upon which an order was made by the District Court, stating that it appeared that the defendants had in their hands property of the judgment debtor, which they claimed by virtue of the said joint assignment made by Simmons and Stowell, and the separate assignment made by Stowell, and that the defendants claimed an interest in the property adverse to Stowell; and appointing Franklin N. Billings receiver of the property of Stowell, as well partnership as individual, and directing him to bring an action against the defendants to recover the property in their hands, or the interest claimed by them in it, and apply the same to the satisfaction of the judgment; and restraining the defendants and Stowell from making any transfer, &c.

Accordingly, on the 11th of November, 1850, Franklin N. Billings, as such receiver, filed a complaint against the defendants, stating the judgment, execution, supplementary proceedings, and order of the Court, and annexing to the complaint copies of the two assignments mentioned in the order, and charging that the same were fraudulent and void, having been made to defeat, hinder, &c., creditors; and that the property in the hands of the defendants was liable to the judgment. Prayer, that the defendants be compelled to deliver the property to the plaintiff, to be applied to the judgment; and for general relief. The answer of the defendants denied the complaint; and insisted on the validity of the assignments.

The cause was tried by the Court, the parties waiving a jury.

It was proved that the three assignments were executed the day of their date, two of the assignees being present, and accepting; and that the other one accepted the next day. Simmons was sick in bed when the assignments were executed; and the

schedules of debts, &c., were not perfected at the time, as the books had to be examined, and balances adjusted, &c., which was done as soon as the clerks of the establishment of the assignees, (which was extensive,) could accomplish it; and the schedules were then filled up. The schedules of property assigned were complete at the execution of the deeds. The assignees had made partial payments to the first class of creditors. There was no proof of intentional fraud.

The plaintiff asked the Court to decide, First, that the assignments, if void in part, were void *in toto*. Second, "that these assignments are void on one of the following grounds:"—1st. A preference of creditors by an insolvent, in an assignment of all his property, is in itself fraudulent. 2nd. As the assignments include only the real estate in California, and not all the real estate of the assignors, they are void. 3rd. Giving the assignees the right to sell on credit invalidates the assignments. 4th. The joint assignment is bad, because the creditors of the old firm come in with those of the new. 5th. The schedules of indebtedness not being annexed, avoids the assignments. 6th. The joint assignment is bad for allowing future interest on debts not carrying interest. 7th. The separate assignment is affected by the faults of the joint one, because it refers to the provisions of the latter for the distribution of the surplus, after paying individual debts. 8th. The facts on the face of the assignment, and the defects in the schedules, &c., are evidence of a fraudulent intent, within the statute. 9th. By our law, the intent is matter of fact, but the definition of matter of fraud is left to the law.

The Court found for the defendants; and gave judgment against the plaintiff for costs. The plaintiff appealed.

*McAllister*, for the appellant. The brief of the appellant is not on file.

*A. C. Peasley*, for the respondents. 1st. A debtor in failing circumstances, by an assignment of his estate in trust, made in good faith, may prefer one creditor to another, when no bankrupt or other law, prohibiting such preference, and no legal lien on the property assigned, exist. 2 Kent, 532; 1 Am. Lead. Cas. 78; Marbury *v.* Brooks, 7 Wheat. 559; 11 Ib. 89; Brashear *v.* West, 7 Pet. 610; Grover *v.* Wakeman, 11 Wend. 195; Hendricks *v.* Robinson, 2 Johns. Ch. 306; McMenomy *v.* Townsend,

3 Johns. 34; Phœnix Co. *v.* Ingraham's assignees, 5 Ib. 462; Murray *v.* Riggs, 15 Ib. 582; Mackie *v.* Cairns, 5 Cow. 580; Hatch *v.* Smith, 5 Mass. 42; Wilkes *v.* Ferris, 5 Johns. 343. 2d. No lien is pretended; and no law of this State prohibits such assignments. Our statute concerning fraudulent conveyances,—stats. 1850, p. 268,—so far as the avoiding clause is concerned, is the same as the 13 Eliz., and the statutes of the several States, in which the right of preferring creditors is established. 3d. Actual fraud is not pretended. The fraudulent intent, which, in all cases under our statute, "shall be deemed a question of fact, and not a question of law," was found by the Court not to exist. The Court found that these assignments were made in good faith, and that there was no intent to hinder or delay creditors. The assignments are therefore valid. Halsey *v.* Whitney, 4 Mason, 227. 4th. The respondents admit that if any part of an assignment is void on account of a fraudulent intent, the whole is void: but a provision in the assignment may be void for another reason than an intent to hinder creditors; and in such case, the whole assignment would not be void, as if a gambling debt were put in the schedule. Mackie *v.* Cairns, 5 Cow. 561. 5th the objection that an assignment does not include all the debtor's property, should not come from the appellant. If the debtor retains any property, it is subject to the demands of his creditors; who are thereby less hindered, &c.; and it is a proof of fair dealing. Halsey *v.* Whitney, 4 Mason, 220; Eastwick *v.* Cailland, 4 T. R. 420; Wilkes *v.* Ferris, 5 Johns. 335. 6th. Why should the right to sell on credit avoid the assignment? It is for the benefit of the creditors, securing the largest price, and avoiding sales at a sacrifice. It may, if coupled with a fraudulent intent, avoid the assignment; but at most, it can, of itself, only amount to a *badge* of fraud, which will be obviated where it appears there was no fraudulent intent. The discretion of the assignees is subject to the control of a court of equity; and the interposition of the Court, to control an abuse of discretion, may become necessary in the case of any other conveyance to a trustee. See Halsey *v.* Whitney, *supra.* 7th. It must be taken for granted that the new members of the firm, Simmons and Stowell,—were liable for the debts of the old firm. If not, the appellant should have

proved it, as a badge of fraud. 8th. The schedules of debts, &c., are merely for convenience, and are not conclusive, either for or against creditors. Besides, in this assignment, the creditors of the first class are described by name and amount; those of the second class are so described that there can be no doubt who they are; *and all other* creditors are in the third class. The trusts can be precisely executed without reference to the schedules. Halsey *v.* Whitney, *supra;* Stevens *v.* Bell, 6 Mass. 339; Wilts *v.* Franklin, 1 Binn. 502. 9th. There was no fraud in directing interest to be paid on deposits. The insolvency of the assignors, and their general refusal to pay any and every body, entitled depositors to interest. 10th. The application of the surplus in the separate assignment to the trusts of the joint assignment, on the supposition that the latter is bad, would not necessarily show a fraudulent intent as to the separate assignment. What is proof of fraud in one deed, is not necessarily proof of fraud in another. Kent, in the chapter on Partnerships. 11th. It is supposed that the appellant, by his last proposition, means that an assignment by an insolvent, made with an honest intent to pay his debts, and with no intent to hinder, &c., may, nevertheless, contain dispositions from which the law will infer a fraudulent intent; that though the intent to do, is matter of fact, yet whether the thing done is fraudulent or not, is matter of law. This would be to create legal presumptions contradicting the finding of juries from the same state of facts. Our statute intended to prohibit the practice of the English judges, who directed juries to find fraud from whatever facts the Court chose to think indicative of it, and thus substituted legal presumptions, for verdicts. By our statute a court cannot say that fraud must be inferred from certain provisions in an assignment, and instruct the jury that if the fact exist, they must infer the fraud. 12th. The policy of allowing such assignments is not an open question. The principle is firmly settled.

Justice HEYDENFELDT delivered the opinion of the Court. In this case, it was stipulated by counsel, in open Court, that the Court should decide upon the legal effect of the deed of assignment, aside from any peculiarity in the agreed case, which might prevent us from so doing.

The appellant insists that the deed of assignment bears upon its face certain *indicia* which are presumptive evidence of an "intent to delay, hinder, or defraud creditors." It is only in regard to one out of several of those pointed out by counsel, that we assent to the proposition. The power given in the assignment to sell on credit is presumptive evidence of a fraudulent intent to hinder and delay, and for the reasons which the appellant's counsel have so well argued. Such a power conferred upon an assignee of the debtor's own selection, may generally be presumed to lead to collusion for the benefit of the debtor. It would certainly enable the assignees to delay the creditors indefinitely, by selling the property upon long credits; and it is no answer to this objection, as insisted by the respondent's counsel, that a court of equity could control him, because, first, if the power is a valid one, it must be valid to all intents, and being the act of the party entitled to confer it, the court could not interfere to take it away; and secondly, the property being once sold, the Court could not take it away from the innocent purchaser, and the wrong would be irremediable. The case of Barney *v.* Griffin, 2 Comstock, 365, was a case precisely the same as the one under consideration; and although we are not prepared to go as far as the Court there went, yet we cannot but approve the reasoning of that decision.

Holding this opinion on the point just considered, the next question to be decided is, does the record shew any error which requires us to reverse the judgment? The 23d section of our Statute of Frauds declares, "The question of fraudulent intent in all cases arising under the provisions of this act, shall be deemed a question of fact, and not of law." And section 17 of article 6 of the Constitution says, "Judges shall not charge juries with respect to matters of fact, but may state testimony; and deliver the law." In construing the section above quoted from the Statute of Frauds, we design to give it the full effect to which it is entitled; and therefore we decide, that although the question of fraudulent intent is made a question of fact in all cases, yet wherever the law declares that certain *indicia* are conclusive evidence of fraud, a verdict against such conclusive evidence should in all cases be set aside. On the other hand, where the evidence of fraudulent intent is declared by law to be only pre-

8

sumptive, the jury have the power, upon considering the whole case, to find against such presumption; and the Court would have no right, upon that ground alone, to interfere with the verdict. Such is the effect which we feel bound to give to the statute.

The counsel for the appellant argued this case upon the hypothesis that the District Court refused to decide that the power to give credit was presumptive evidence of fraud. We cannot discover this by anything which appears in the record;—if we did, we would not hesitate to reverse the judgment. · The requests to the Court below are each accompanied by the same commencement, which asks the Court to decide "that these assignments are void." Holding, as we do, that the power given to the assignees to sell on credit is not conclusive, but only presumptive evidence of fraud, it follows that the Court correctly refused to decide that the deed was void on that ground; and the Court having also, in the capacity of a jury, passed upon the facts, and found against the presumption of fraud, there is no error disclosed for our correction; and the judgment must therefore be affirmed.