[L. A. No. 24884.   In Bank.   Dec. 12, 1958.]

AUGUST J. BUMB, Respondent, v. MINNIE M. BENNETT et al., Appellants.

William Katz for Appellants.

Harold A. Slane, Harold A. Slane, Jr., and Sidney J. Unickel for Respondent.

Glen Behymer, James M. Conners, Cyril W. McClean, Brown & Brown, Howard B. Brown, Craig, Weller & Laug-

harn, Frank C. Weller, Hubert F. Laugharn, Thomas S. Tobin, William E. Bartley, Andrew F. Leoni, Joseph S. Potts, Gendel & Raskoff, Bernard Shapiro, J. Rolf de Wied, Herbert Colden and Kenneth G. McGilvray as Amici Curiae on behalf of Respondent.

SPENCE, J.—Defendants Minnie M. Bennett, Victoria E. Bloch and Leonard Bloch appeal from a judgment quieting title to a parcel of real property in plaintiff as assignee for the benefit of creditors of B. F. Wells and Son, a copartnership, and enjoining defendants from claiming any interest therein.

From and after December 30, 1955, the record owners of the property in dispute were "BERT F. WELLS and EDWARD L. WELLS, father and son, as Tenants in Common, doing business as B. F. WELLS & SON." On May 25, 1956, B. F. Wells and Son, by Edward L. Wells, executed an assignment of all the partnership property to plaintiff as assignee for the benefit of the partnership creditors. The assignment was accepted by plaintiff at approximately 9 a.m. on May 29, 1956. On that same day, at 12:17 p.m., defendant Bennett, as the representative of certain unsecured creditors of B. F. Wells and Son, levied an attachment upon the real property here involved and, after judgment in her favor, assigned her rights to defendant Victoria E. Bloch, who thereafter purchased the property at execution sale. Defendant Leonard Bloch is the husband of defendant Victoria E. Bloch.

The trial court entered judgment for plaintiff based on findings that the realty was partnership property, that the partnership liabilities were greatly in excess of its assets, and that the assignment was valid and prior to the attachment. There can be no question but that the judgment was proper if the assignment was valid. (*Brainard* v. *Fitzgerald*, 3 Cal.2d 157, 163 [44 P.2d 336].) Defendants contend that it was not.

Defendants first argue that the assignment is void because it did not comply with the code provisions relating to statutory assignments for the benefit of creditors. (Civ. Code, §§ 3449-3473.) ▪ Defendants concede that an assignment of personal property for the benefit of creditors may be valid as a common-law assignment although it is not made in conformity with those sections. (*Brainard* v. *Fitzgerald, supra,* 3 Cal.2d 157.) But they insist that common-law assignments of personalty are valid only because of legislative recognition of such assignments in section 3440, subdivision (e), of the

Civil Code. Since that section has no application to transfers of realty, they conclude that assignments of real property are invalid unless the statutory provisions are observed.

■ There is no merit in this contention. Section 3440 does not purport to validate any transfer of a debtor's property; it merely renders invalid certain transfers which are not accompanied by an immediate change of possession. And, contrary to defendants' contention, there are other provisions in our codes which give recognition to common-law assignments for the benefit of creditors. Thus section 1204 of the Code of Civil Procedure provides for preferred labor claim liens against "any property" transferred by "any assignment, . . . whether formal or informal, . . . made for the benefit of creditors. . . ."

■ However, we need not further labor the question of legislative "recognition," for the validity of common-law assignments—whether of real or personal property—does not depend on such tenuous ground. They are valid because they existed at common law (See *Billings* v. *Billings*, 2 Cal. 107 [56 Am.Dec. 319]) and because the only presently effective statutory provisions (Civ. Code, §§ 3449-3473) which could be construed as invalidating them do not "affect the power of a person, although insolvent, . . . to transfer property . . ., in good faith to a particular creditor, or creditors, or to some other person or persons in trust for such particular creditor or creditors for the purpose of paying or securing the whole or part of a debt owing to such creditor or creditors. . . ." (Civ. Code, § 3451; *Brainard* v. *Fitzgerald, supra,* 3 Cal.2d 157, 160-161; *Jarvis* v. *Webber*, 196 Cal. 86, 98 [236 P. 138].) ■ It follows that common-law assignments of both personalty and realty are permitted by our laws, and that neither are invalid because they do not conform to the provisions of the Civil Code relating to statutory assignments for the benefit of creditors.

■ Defendants next contend that the assignment is void because it was not recorded. The assignment was not invalid as against defendants by reason of the sections requiring assignments for the benefit of creditors to be recorded (Civ. Code, §§ 3458, 3459, 3463-3466) since those sections do not apply to common-law assignments. (*Brainard* v. *Fitzgerald, supra,* 3 Cal.2d 157, 161; see also *Jarvis* v. *Webber, supra,* 196 Cal. 86, 98; *First Nat. Bank* v. *Pomona Tile Mfg. Co.*, 82 Cal. App.2d 592, 608 [186 P.2d 693].) ■ Nor is the transfer invalid because of the failure to record it as a conveyance

(Civ. Code, § 1215; *Moore* v. *Schneider*, 196 Cal. 380, 389 [238 P. 81]) of real property, since an unrecorded deed or assignment is sufficient to pass title against a subsequent attaching creditor. (*Watkins* v. *Wilhoit*, 104 Cal. 395, 398-399 [38 P. 53]; *Fares* v. *Morrison*, 54 Cal.App.2d 773, 776 [129 P.2d 735].)

Defendants also assail the assignment because it was not made for the benefit of creditors generally. The deed of assignment provided that "before secured creditors shall be paid hereunder they shall first be required to surrender to said Assignee the security so holden by them and accept the provisions of this agreement."

Since the beneficiaries of the assignment were limited to a particular class of creditors and to such other creditors as assented to its terms, it was not an assignment for the benefit of creditors generally. (*Jarvis* v. *Webber, supra*, 196 Cal. 86, 98-99.) But that fact, standing alone, does not render the transfer invalid, for "preferences are not illegal under our law." (*Brainard* v. *Fitzgerald, supra*, 3 Cal.2d 157, 163.)

An insolvent debtor may lawfully pay one or more of his creditors to the exclusion of others by a direct transfer. (Civ. Code, § 3432.) We can see no reason why he may not do the same thing by way of a transfer in trust where there is no basis for contending that the transfer is in fraud of creditors. (See *Brainard* v. *Fitzgerald, supra*, 3 Cal.2d 157, 162; *Jarvis* v. *Webber, supra*, 196 Cal. 86, 98-99.) It is true that *Sabichi* v. *Chase*, 108 Cal. 81 [41 P. 29], and *Rapp* v. *Whittier*, 113 Cal. 429 [45 P. 703], contain apparent holdings to the effect that preferential assignments are invalid. Those cases, however, are no longer in point. They were based on section 3457 of the Civil Code—a section subsequently made inapplicable to common-law assignments. (Stats. 1905, ch. 466, § 1, p. 622; now Civ. Code, § 3451.) To the extent that *Kaye* v. *Jacobs*, 122 Cal.App. 421, 430 [10 P.2d 186], purports to follow the Sabichi case, it is disapproved.

Additionally, defendants maintain that the requirement that secured creditors must surrender their security or forfeit their right to participate in the estate is so unreasonable as to render the assignment void. But even assuming that this condition might render the assignment invalid as against a nonconsenting secured creditor, defendants have no standing to raise this objection since they could not be injured by enforcement of the condition. (Burrill, Voluntary Assignments for the Benefit of Creditors (1894), § 452, p. 600.) No

other creditors are in a position to object since they have consented to the assignment. (See *Peterson* v. *Ball,* 211 Cal. 461, 468 [296 P. 291, 74 A.L.R. 187] ; *Garn* v. *Thorwaldson,* 40 Cal. App. 62, 66 [180 P. 9] ; *Stone-Ordean Wells Co.* v. *Anderson,* 66 Mont. 64 [212 P. 853].)

Defendants further claim that the assignment is invalid because it was neither signed by B. F. Wells nor authorized by him in the manner prescribed by law. Record title to the property was in the name of the individual partners as tenants in common. However, the uncontradicted evidence showed that the property was purchased with partnership funds, that it constituted the place of business of the partnership, and that in every way it was treated as partnership property by the record owners. The trial court's finding that the property was an asset of the partnership was, therefore, amply supported. (Corp. Code, § 15008; see also *Vineland Homes, Inc.* v. *Barish,* 138 Cal.App.2d 747, 755-758 [292 P.2d 941] ; *Rishwain* v. *Smith,* 77 Cal.App.2d 524, 534 [175 P.2d 555] ; *Parmelee* v. *Brainard,* 62 Cal.App.2d 182, 184 [144 P.2d 381].)

As partnership property used as the firm's place of business and held in the names of the individual partners as tenants in common, it could not be conveyed by one partner without the express authorization of his copartner. (Corp. Code, §§ 15009, 15010; *Petrikis* v. *Hanges,* 111 Cal.App.2d 734, 738-739 [245 P.2d 39].) And, absent evidence that the copartner had abandoned the business, it could not be assigned for the benefit of creditors by one partner without the authorization of the other. (Corp. Code, § 15009; see also *Richlin* v. *Union Bank etc. Co.,* 197 Cal. 296, 304 [240 P. 782].)

The assignment was executed in the name of the partnership by Edward L. Wells. It is not contended that Bert F. Wells had abandoned the business, but, over defendants' objection, Edward was permitted to testify that he had discussed the assignment with his partner, and that the latter had said, "Go ahead." Defendants contend that this testimony was inadmissible hearsay. Since the witness was testifying to the fact that the statement was made, the testimony was not hearsay. (6 Wigmore, Evidence (3d ed. 1940), § 1766, p. 177.) And unless the authorization was required to be in writing, it sufficiently expressed the assent of the nonsigning partner.

As a matter of agency or partnership law, there is no requirement that the assent be reduced to writing. (*Hooper* v. *Baillie*, 118 N.Y. 413 [23 N.E. 569]; Crane, Partnership (2d ed. 1952), p. 267.) But defendants maintain that the assignment operated as a conveyance of the property in dispute and therefore was required to be "subscribed by the party . . . assigning . . . the same, or by his lawful agent thereunto authorized by writing." (Code Civ. Proc., § 1971; see also Civ. Code, §§ 1091, 1624, 2309; Code Civ. Proc., § 1973.) While the assignment might be voidable by the nonsigning partner, he has never objected and defendants, as judgment creditors, cannot invoke the statute of frauds to avoid the assignment. (*Wood Estate Co.* v. *Chanslor*, 209 Cal. 241, 250-251 [286 P. 1001]; *Mitchell* v. *Locurto*, 79 Cal.App. 2d 507, 512-513 [179 P.2d 848]; 6 C.J.S., Assignments for Benefit of Creditors, § 374, p. 1419.)

Defendants next argue that the assignment insufficiently described the real estate assigned. "[A] description of the property by general terms, as is so generally the case in assignments, is no more void for uncertainty than it is in its less frequent use in deeds." (4 American Law of Property (1952), p. 781.) The deed of assignment purported to transfer "all of the property of the Assignor of every kind and nature and wheresoever situated, both real and personal or mixed, and any interest or equity therein not exempt from execution. . . ." The assignment did not specifically describe any real property, but the phrase "all of the property of the Assignor" sufficiently described the property to be conveyed. (*Brusseau* v. *Hill*, 201 Cal. 225, 230-231 [256 P. 419, 55 A.L.R. 157]; *Pettigrew* v. *Dobbelaar*, 63 Cal. 396, 397.)

Defendants further maintain that the assignment is invalid because it provided that the assignee was to pay the net proceeds to the creditors "after deducting all monies which said Assignee shall at his option pay to discharge any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, including any and all personal income taxes which may be due from E. L. W[ells] and B. F. W[ells] and after paying all charges and expenses" of administration.

Admittedly, this provision could be read as directing the assignee to pay the individual partners' tax liabilities from the partnership assets before applying any of the proceeds to discharge the partnership obligations. But the assignment should not be construed as conferring this authority where its

language is consistent with a different and valid interpretation. (Burrill, Voluntary Assignments for the Benefit of Creditors (1894), § 285, p. 382; Bump, Fraudulent Conveyances (2d ed. 1876), pp. 358-359.) The challenged clause can be read as authorizing the assignee to prefer only such income tax obligations as may be a lien on the partnership property or which, under the law, are entitled to priority of payment.

The income tax obligations of the individual partners are not liens on the partnership property, as distinguished from the partners' shares in any surplus (*United States* v. *Worley*, 213 F.2d 509; *Adler* v. *Nicholas*, 166 F.2d 674) nor are they entitled to priority of payment from that property. (*United States* v. *Kaufman*, 267 U.S. 408 [45 S.Ct. 322, 69 L.Ed 685].) Therefore, the assignee was not authorized to prefer or pay them, and the assignment is not void as reserving a benefit to the individual members of the firm.

Finally, defendants maintain that the assignment is void because the assignee drew three lines through the word "net" in the sentence providing that he was entitled to "ten per cent (10%) of all net funds coming into his possession pursuant to this agreement." The assignee admitted drawing the lines, but insisted that he did not strike the word. He explained that he initially thought that the insertion of the word "net" was "obviously . . . wrong," that he drew the lines through it, but after consulting with attorneys representing the creditors and the assignor, he "accepted the assignment on the basis that it was 10 per cent of all net funds and so signed it."

The cancellation of the word "net" effected an alteration of the instrument. Since it purported to change the rights of the parties, it was material. (*Consolidated Loan Co.* v. *Harman*, 150 Cal.App.2d 488, 491-492 [310 P.2d 450].) However, not every material alteration of a written instrument will invalidate it. Thus an alteration by a stranger to the instrument or an agent acting beyond the scope of his authority is a mere spoliation and does not affect the right of the parties to enforce the instrument as it was originally written. (*Walsh* v. *Hunt*, 120 Cal. 46, 53 [52 P. 115, 39 L.R.A. 697].) It has also been said that "a material alteration of a deed by a trustee who holds the legal title for others, who are entitled to the enjoyment of the beneficial interest, does not invalidate the deed, for the trustee is not a party within a rule that a material alteration by a party to a deed, with a view to increase the benefit which he may take under

it, renders it void." (8 Thompson, Real Property (perm. ed. 1940), § 4235, p. 16; see also 3 C.J.S., Alteration of Instruments, § 53, p. 971.)

We are of the opinion that this latter rule correctly states the law and is controlling here. The assignee for the benefit of creditors, like a trustee, holds a bare legal title in trust for the beneficiaries. Accordingly, his alteration of the instrument in a manner neither sanctioned by, nor advantageous to, the parties beneficially interested, but solely for the purpose of increasing his own compensation, should not deprive the partnership creditors of their rights under the assignment. We have concluded, therefore, that the assignment was not rendered void by the alteration, and that plaintiff was entitled to quiet his title as assignee for the benefit of creditors.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.

Appellants' petition for a rehearing was denied January 7, 1959.