[Civ. No. 19803.   First Dist., Div. Three.   Mar. 16, 1962.]

THE MECHANICS BANK OF RICHMOND, Plaintiff and Respondent, v. M. H. ROSENBERG, Defendant and Appellant.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Defendant and Appellant.

Jonas & Berger and William Berger for Plaintiff and Respondent.

DEVINE, J.—Plaintiff The Mechanics Bank of Richmond and defendant M. H. Rosenberg, doing business as Emarcy Distributing Company, are, and at all times relevant to the cause were, creditors of J. R. Ramos and his wife, and they dispute their respective claims to the sum of $2,280.99, plaintiff contending that the sum, in the form of a savings bank deposit, belonged to the Ramoses at the time when plaintiff caused execution to be levied on it, and defendant contending that the sum was then held by a trustee for the benefit of creditors. Other defendants have defaulted after service of summons. The action takes the form of one for declaratory relief.

The trial court expressly found that at the time of the execution levied at plaintiff's instance, Alan G. Banks, an attorney, was the holder of $2,280.99 which belonged to the Ramoses, and that title to said sum never passed to Banks from the Ramoses as trustee or otherwise, and the court accordingly awarded judgment to plaintiff. Defendant appeals, contending that there is no substantial evidence to support the findings and judgment.

Ramos and his wife owned and operated a phonograph business in El Cerrito, Contra Costa County, some of the inventory of which was subject to a chattel mortgage to plaintiff bank. On March 1, 1956, notice of intended sale of the business and inventory to Leyser and Gordon was given, pursuant to the Bulk Sales Act, section 3440.1 of the Civil Code, the notice stating that the purchase price would be paid on March 12, 1956, at the office of Alan G. Banks, attorney for the intended vendees. On March 8, 1956, plaintiff's attorneys caused garnishment to be levied on any funds belonging to the Ramoses in the hands of Mr. Banks, on the theory, it seems, that security for the chattel mortgage had become dissipated. He replied to the garnishment that he held no funds of the Ramoses. However, at that time and for some months later, according to the testimony of Mr. Jonas, one of plaintiff's attorneys, Mr. Jonas did not know that what he thought was a sale in progress was merely an option, and Mr. Jonas told Mr. Banks that the bank would not hold up the deal, which the prospective vendees were about to withdraw from because of the garnishment, provided Mr. Banks would deposit the sum of $2,280.99 in The Mechanics Bank, and that they would "fight it out later in Court."

Mr. Jonas had insisted with Mr. Banks that, by the garnishment, his client, The Mechanics Bank, had acquired superior

rights over other creditors of the Ramoses. Mr. Banks had disputed this. At the pretrial conference, it was agreed by the parties, and the agreement was incorporated into the pretrial conference order, that at the time of the garnishment Mr. Banks did not hold any funds belonging to the Ramoses; and this was found as a fact by the court in its findings. The contention made by Mr. Jonas, therefore, was not a sound one, and it is recited here only to give the sequence of events.

Mr. Jonas then wrote a letter, as attorney for plaintiff, to Mr. Banks, the text of which is given in the footnote hereof.[1] Mr. Banks then wrote to the attorneys for M. H. Rosenberg (Emarcy Distributing Company), defendant herein, confirming an arrangement he had made with them whereby the equipment purchased was to be held harmless from any action on the part of Emarcy, and that Banks was to deposit $2,280.99 in trust for the benefit of named creditors, the same ones listed in the letter of Mr. Jonas. At the time these letters were written, plaintiff Mechanics Bank's claim amounted to about 27 per cent of the total amount of claims, and Emarcy's about 67 per cent thereof. Mr. Banks contacted the other

---

[1] "Mr. Alan G. Banks
Attorney at Law
Latham Square Building
Oakland, California

Re: Mechanics Bank vs. J. R. Ramos et al.
Action No. 271807

"Dear Sir:

"Upon your depositing the sum of
$2280.99—(Twothousandtwohundredandeighty 99/100) Dollars
in a trust account with the Mechanics Bank of Richmond for the benefit of the creditors of said J. R. Ramos et al., to-wit:

1. Mechanics Bank of Richmond...........$ 5623.04 plus int. etc.
2. Miles-Standish ........................   300.40
3. Gupta & Gupta, Attorneys .............   200.00
4. Joseph & Gowan, Attorneys ............   400.00
5. Robert Pelletreau, Attorney ..........   142.00
6. Emarcy Distributing Co. ..............  14080.12
7. Jack Vedder ..........................   150.00

Total...........$20859.26

in accordance with approval of said creditors, having total claims of $20859.26, as stated, we have authority to release you and your clients, Mr. Henry J. Leyser and Sam Gordon from any further obligation in this matter. Our clients, Mechanics Bank of Richmond further agree that the equipment bought from R. F. Jones Company and J. R. Ramos et al. shall not be made subject to any further demand, it being understood that the rights of the respective creditors shall remain unimpaired as to J. R. Ramos et al.

Very truly yours,
H. M. Jonas"

creditors by telephone and obtained their consent to depositing the funds in a trustee account.

For several weeks Mr. Banks held, in his own possession, the sum of $2,280.99, the net proceeds of the sale from the Ramoses to Leyser and Gordon, for the purpose of distributing it among the named creditors if they should agree upon a distribution. On April 10, 1956, Mr. Banks, having come to the conclusion that an agreement would not be made, deposited the sum in The Mechanics Bank of Richmond, in the name of Alan G. Banks, trustee, with instructions to the bank that withdrawals could be made only "by order of Court or agreement of all creditors." On June 8, 1956, plaintiff obtained default judgment against the Ramoses in the sum of $6,133.74 and on June 19, 1956, plaintiff caused execution to be levied on the account in the name of Alan G. Banks, trustee.

There is testimony by Mr. Banks that the Ramoses told him to "take the money and deposit it as a trust in accordance with the agreements I had made over the telephone with each and every one of the creditors listed in that letter." (On direct examination of Mr. Banks, the statements of the Ramoses were objected to as hearsay, but plaintiff's counsel later asked for the conversation on cross-examination.) The claims against the Ramoses which were filed with Mr. Banks were almost 10 times as large as the net proceeds of the sale.

It is the contention of plaintiff bank that by reason of its execution it is entitled to the entire amount of the deposit. Of course, to sustain that contention, it is necessary that title to the deposit actually was in the Ramoses at the time of the levy. It is the contention of defendant that title had passed to Mr. Banks as trustee, that there was nothing of the Ramoses which was reached by the execution, and that the court, in its declaratory relief suit, should have ordered a pro rata distribution of the funds among the creditors named in the letters.

The procedure for statutory assignment for benefit of creditors, as set forth in section 3449 of the Civil Code and succeeding sections, was not followed, but the law of this state recognizes common-law assignments for the benefit of creditors. (*Bumb* v. *Bennett*, 51 Cal.2d 294, 299 [333 P.2d 23]; *Brainard* v. *Fitzgerald*, 3 Cal.2d 157, 160, 161 [44 P.2d 336]; *Jarvis* v. *Webber*, 196 Cal. 86, 98 [236 P. 138].) In fact, California has two completely independent systems by which an insolvent debtor can assign his property, and it has been observed that the common-law mode is usually followed because it is less expensive and less complicated than the statu-

tory one. (Fimberg, *Assignors for the Benefit of Creditors in California: A Proposed Revision of Ineffectual Statutory Provisions,* 6 U.C.L.A. L. Rev. 573, 587.)

The question in this case is whether the Ramoses vested title to the deposit in an assignee or trustee, Mr. Banks. We have examined this problem from the standpoint of the debtors, the Ramoses, from that of the claimed assignee or trustee, and from the standpoint of the creditor, who is the plaintiff herein.

We find no substantial evidence to support the proposition that the Ramoses retained title to the deposit. There was direct testimony by Mr. Banks that they told him to deposit the sum in trust for the benefit of creditors. The claims of creditors amounted to almost 10 times the amount on deposit, and the Ramoses could have had but little hope that there would be anything left for them, but even if there were, the assignment would have passed title to the assignee, who would hold the excess as agent or trustee for the assignors. (*First National Bank* v. *Pomona Tile Mfg. Co.,* 82 Cal.App.2d 592, 602-603 [186 P.2d 693].) Mrs. Ramos did ask Mr. Banks at one time if the money could be applied to discharge a sales tax obligation, and Mr. Banks replied that it could not because it was being held for the named creditors, and no further demand or suggestion by the Ramoses appears from the evidence. Of course, the intention of the debtor to divest himself of title must be present, but we do not believe that any secret intention of the debtors directing such a trust for the benefit of creditors to be set up would defeat the assignment, which is in the nature of a trust, and, in any event, there is no evidence that the Ramoses did intend to reserve title to themselves. The Ramoses did not testify. What was intended by the arrangement may be fairly presumed by what was effected by it (*First National Bank* v. *Pomona Tile Mfg. Co., supra,* at p. 601; Code Civ. Proc., § 1963, subd. 3), and in this case what was effected was that the Ramoses were able to sell the business without interference from creditors by assigning the net sum for their benefit.

Looking at the transaction as it was regarded by Mr. Banks, we find that he acted as a trustee. He deposited the money in the trustee account, he responded to the execution that he held no funds of the Ramoses, and he testified that he held the funds awaiting either an agreement of the creditors or a decree of the court. These actions comport with the duties of a trustee for the benefit of creditors, but even had

he failed to act, the assignment would not have been defeated (6 C.J.S. 1329).

Now looking at the transaction insofar as plaintiff, by its attorney, participated in it, we note that the letter which is set forth earlier in footnote 1, signed by the bank's attorney, contemplates setting up of a trust account for the benefit of the creditors of Ramos and sets forth with precision the amounts of the claims of each of the creditors who had filed claims with Mr. Banks, including the claims of defendant Emarcy and of the plaintiff bank itself. This, standing by itself, obviously would constitute the bank a creditor consenting to the assignment and would prevent execution by the bank on the assigned funds (*Wilhoit* v. *Cunningham,* 87 Cal. 453 [25 P. 675]). However, it is contended by plaintiff that this conclusion is avoided by the last sentence of the letter, which, plaintiff contends, at least created an ambiguity which thereupon was explained by the testimony of the bank's counsel, Mr. Jonas. The last sentence reads, in part, as follows: ". . . it being understood that the rights of the respective creditors shall remain unimpaired as to J. R. Ramos et al." This sentence, taken by itself, would be susceptible to meanings which would not be in conflict with an assignment, such as: (a) a reservation to plaintiff of the right to proceed against assets outside the assignment (*Lacy* v. *Gunn,* 144 Cal. 511, 518 [78 P. 30]), or (b) the preservation to the plaintiff of any lien which it may have had before the assignment, for although, as stated above, no assets actually were reached by the garnishment, plaintiff's counsel at the time of the assignment believed that he had established a lien for his client. However, plaintiff contends that the true meaning of the last sentence is that any creditor, including the bank, could proceed in any way it wished, by execution or otherwise, and that the bank in executing proceeded in accordance with such reserved right. Counsel for the bank produced testimony of Mr. Jonas that before the assignment he had conversations with Mr. Banks to the effect that he was not to be hindered in any way he thought necessary to protect his client, and that the concluding sentence of the letter was the result of these conversations. It is to be doubted that such conversations could overcome the assent, in the first sentence of the letter, to a trust for the benefit of creditors. What benefit would it be to all of the creditors if one of them, and, in particular, the one who chiefly made the trust possible, were to have the right to appropriate the entire fund by execution?

What purpose would there have been in giving the total amount of the claims and, with precision, the amount of each creditor's claim? We think that if the right of execution was to be preserved to each creditor, the exact reservation would have had to be spelled out; but, of course, such a contradictory feature, utterly at variance with the nature of a trust or assignment for the benefit of creditors, no doubt would have been rejected out of hand, and surely Mr. Banks would not have made a proposal for acceptance of such a self-defeating scheme to the other creditors. "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.'' (Civ. Code, § 1652.) The general purpose herein was to constitute an assignment for the benefit of all of the named creditors.

However, even if we were to give such force to the last sentence of the letter as to consider the bank a non-consenting creditor, this would not destroy the assignment for the benefit of the other creditors, and the result would be the postponement of the bank's claim to that of the others, for preferences are not illegal under our law. (*Brainard* v. *Fitzgerald, supra,* 3 Cal.2d at p. 163; *Bumb* v. *Bennett, supra,* 51 Cal.2d at p. 300; Civ. Code, § 3451.) Defendant, in its answer to the declaratory relief complaint, does not seek such postponement against the bank, but a ratable distribution among all the named creditors.

If there were substantial conflict in the evidence on any point of this case, we would, of course, follow the trial court's resolution of the conflict. As we see it, the evidence points entirely one way, in favor of the creation of an assignment or trust for the benefit of creditors as a result of which the execution was ineffectual.

On April 26, 1956, Emarcy reduced its claim to judgment in the amount of $15,786 which, like plaintiff's judgment, has been increased by interest. Emarcy did not execute on its judgment but that is not, as plaintiff would have it, a neglect chargeable to Emarcy, because the assignment for benefit of creditors having removed title from the Ramoses, execution by Emarcy would have been ineffectual. [ ] The fact that creditors other than Emarcy did not plead to the declaratory relief suit does not deprive them of their right to participate.

The judgment is reversed, with directions to the trial court to determine the validity of the claims of the other creditors,

those of plaintiff and defendant having been established by judgments heretofore, and to decree a distribution ratably according to valid claims. Each party to bear own costs of appeal.

Draper, P. J., and Salsman, J., concurred.