Donald L. HANSEN, Appellee,

v.

ATLANTIC RICHFIELD COMPANY, a corporation, Appellant.

No. 46987.

Court of Appeals of Oklahoma,
Division No. 2.

Nov. 4, 1975.

Rehearing Denied Nov. 26, 1975.

Certiorari Denied March 9, 1976.

Released for Publication by Order of Court of Appeals March 11, 1976.

Harry M. Crowe, Jr., Crowe & Thieman, Tulsa, for appellee.

Donald E. Hammer, Lance Stockwell, Boesche, McDermott & Eskridge, Tulsa, for appellant.

NEPTUNE, Presiding Judge.

This action was brought by Donald L. Hansen for termination allowances in the amount of $6,634 which he claimed were due him under the terms of a document entitled "Policy Governing Terminations Resulting From Merger," which was issued by plaintiff's employer, Atlantic Richfield Company (ARCO).

Plaintiff Hansen is a geologist by profession. In 1954 he was hired in that capacity by Sinclair Oil Corporation (Sinclair). During the ensuing years Hansen received various salary increases and promotions from Sinclair. In 1966 plaintiff was promoted to the position of staff member for the chief geologist of Sinclair. He remained in this position until 1969 when Sinclair was merged into ARCO.

The merger of Sinclair into ARCO was announced in early 1969. Actual integration of operations of the two organizations was not to occur until July 1, 1969.

On April 3, 1969, the Executive Vice President of ARCO circulated a letter to all salaried employees of Sinclair and ARCO. In part, the letter stated:

"As a result of the merger . . . there will be instances where positions and functions overlap causing some personnel to be surplus to the organization. In order to insure equitable treatment to such personnel, the Company has adopted the attached 'Policy Governing Terminations Resulting From Merger' which provides special allowances to all sala-

ried employees whose services with the Company are terminated as a direct result of the merger. The Policy is effective March 17, 1969, and will remain in effect until December 31, 1969, unless sooner revised or terminated."

Attached to the letter was the "Policy Governing Terminations Resulting From Merger." That portion of the policy material to this appeal reads as follows:

"D. *Eligibility for Special Allowances*

1. The special allowances provided by this Policy will be granted at the sole discretion of the Company.

2. The special allowances provided by this Policy will be applicable only to an employee who meets *all* the following requirements:

   a. He is not represented by a union; and

   b. He has not attained age 62; and

   c. He has been declared surplus to the needs of the organization as a result of the merger; and

   d. He has not rejected an offer to transfer to another position in the Company which is of substantially similar status and compensation; and

   e. He is not being discharged for cause, separated because of inability to meet job requirements, or is not retiring under a disability retirement allowance."

In plaintiff's area of employment—geology—it was determined that ARCO would retain nine of the twenty employed in that capacity by Sinclair. An informal polling of these geologists revealed that two or three desired to be declared surplus and not be considered for positions in ARCO (plaintiff did not request that he be de-

clared surplus at this time). These requests were honored by ARCO. Of those remaining, Dr. James Martin, Sinclair's Chief Geologist, compiled a list indicating which employees in his opinion should be retained by ARCO. Plaintiff's name was at the top of the list of those designated for retention.

This list was taken by Dr. Martin to ARCO's Dallas office where the final decision was made on which employees would be retained and which would be declared surplus and eligible for termination allowances. Plaintiff was among those retained by ARCO.

On June 10, 1969, Mr. Peterson, an employee of Sinclair prior to the merger and Hansen's immediate supervisor prior to his promotion to the staff of the chief geologist, informed plaintiff that he had been recommended for a position on Peterson's new staff. The following day plaintiff conveyed to Mr. Peterson his wish to be declared surplus as he did not desire this position as it was not, in his opinion, comparable to the position he now held. On June 12, 1969, plaintiff stated such in a letter to Dr. Martin, his conclusion for this opinion being:

"I feel that my present position as geologist on the staff of the Chief geologist demands a higher standard of professional ability, includes greater responsibilities and affords greater possibilities for advancement than the position for which I have been recommended."

Plaintiff concluded with a request that he be declared surplus. At the bottom of the letter Dr. Martin wrote "Concur" with the date "6/18/69."

During the last week of June, Mr. Peterson informed plaintiff that his request to be designated surplus had been denied.[1]

---

1. The policy provided:
"Eligibility of individual employees for allowances under this Policy will require the approvals of the appropriate Division Head, or his authorized delegate(s), and the Vice President of Corporate Employee Relations, or his authorized delegate(s)."

The Management Review Committee which considered Mr. Hansen's requests was comprised of three individuals and met in Dallas, Texas.

Plaintiff then talked to Mr. Brainard, Executive Vice President of Sinclair, who told plaintiff that he felt that the positions were comparable and then suggested to plaintiff, concerning the position offered, that he "give it a try."

On July 2, 1969, Hansen accepted the position and signed the required forms. Plaintiff spent the first two weeks in July completing the work in his old position. He then used two of his four weeks of vacation to take off the remainder of July. Hence Hansen did not start working at his new position until the beginning of August. In mid-August plaintiff accepted employment with another oil company; the job was to commence in mid-September. This information plaintiff did not convey to anyone at ARCO. Plaintiff did, however, by an August 15, 1969 letter to Mr. Brainard, again request termination and severance pay claiming the job to which he had been assigned was not comparable to his previous job with Sinclair. This request was again denied in a letter dated September 3, 1969. The letter stated:

"He [Hansen] did, in fact, accept a position in the new organization. It is our understanding that he now wishes to resign from this position. In accepting the position he achieved the security of employment with ARCO."

On September 12, 1969, Hansen responded by letter to Mr. Brainard which, after stating the history of his requests for termination allowances, concluded with these two paragraphs:

"In my present position I report to the District Extension Geologist who in turn reports to the District Geologist. My duties consist of correlating logs and maintaining geologic base maps in western Oklahoma, and preparing plats and recommendations for development wells and farmouts. I no longer have the exclusive use of a secretary as I did previously, and office accommodations are not as desirable.

"Because the job to which I have been assigned is not comparable, I hereby give notice that it is not acceptable and that I will no longer continue working in this assignment."

Plaintiff then went on vacation for the last two weeks of September. During this time he commenced work with Apache Oil Company. Just prior to the time when he was to return to ARCO from his vacation he relayed to the company his decision "not to return" to their employment.

On February 17, 1970, plaintiff filed this action against ARCO asking for termination allowances of $6,634. Dispute has existed only as to plaintiff being qualified to receive termination allowances—with ARCO conceding that if plaintiff were so found to be qualified the proper amount would be the $6,634 alleged. ARCO moved for a summary judgment, which the trial court granted to defendant. Appeal was taken by plaintiff and the trial court's judgment was reversed and remanded for the following to be determined: "did the defendant Company act in an arbitrary or capricious manner in exercising its discretion in determining plaintiff's eligibility to receive benefits under the Policy?"[2]

On remand the case was tried on the issues of whether the positions were substantially similar and whether ARCO's actions were arbitrary and capricious. As the salary paid plaintiff was identical in both positions, no question was raised in this area as to comparability. For purposes of this appeal it is not necessary to detail the testimony.

After due deliberation the jury returned a verdict for plaintiff in the amount of $6,634 with interest from September 27, 1969. The court further awarded plaintiff costs of $55 and attorney's fees of $4,500; making an aggregate award of $12,773.45 to plaintiff.

2. *Hansen v. Atlantic Richfield Co.*, Okl.Ct.App.Div. 1, 43 O.B.A.J. 3412 (Dec. 1972).

From this judgment ARCO appeals under five propositions of error.

Two propositions relate to the proper burden of proof, and hence we will consider them jointly. The two propositions are:

"Hansen failed to meet his burden of proof of arbitrariness and capriciousness which would entitle the jury to substitute its judgment for that of ARCO."

and

"The court erred in refusing to give ARCO's requested Instruction No. 5."

First, it must be determined what standard of proof need be shown by plaintiff in order that he may recover. ARCO contends that proof as to arbitrariness and capriciousness must be overwhelming. Plaintiff, on the other hand, claims that the showing of proof to recover need be only by a preponderance of the evidence. Neither can we find nor has either party cited any cases which have dealt with the burden of proof in circumstances such as are involved in the instant case.

Those cases in which there exists a fund supplied by the employer for either retirement or disability benefits, in which a committee is responsible for dispensing monies by use of certain guidelines, tend to support ARCO's conclusion that proof of bad faith, arbitrariness or capriciousness, in instances where benefits are not bestowed, must be overwhelming rather than by a mere preponderance of the evidence. One such case is *Menke v. Thompson,* 8th Cir., 140 F.2d 786 (1944), where the court stated:

"The burden of showing such fraud, bad faith, or mistake was upon the appellant [plaintiff] here, and, to sustain such a showing, the evidence 'must be more than a mere preponderance, it must be overwhelming.' "

This greater burden is utilized as a consequence of the judicial system's reluctance to interfere with a business corporation's discretionary decisions. *Teren v. First National Bank of Chicago,* 243 Or. 251, 412 P.2d 794 (1966). In *Going v. Southern Mill Employees' Trust,* Okl., 281 P.2d 762 (1955), the Oklahoma Supreme Court cited approvingly *Menke v. Thompson,* supra. In the *Going* case the court stated:

"[A]n employer who creates a profit sharing retirement plan for the benefit of his employees, which plan is a voluntary one supported solely by contributions from the employer, has the right to prescribe the terms of the plan and the manner in which it should be administered; and such terms as are prescribed are binding upon and determinative of the rights of an employee asserting a right to benefits thereunder. And where the terms of the plan as prescribed by such employer provide that the decision of the trustees appointed to administer such plan shall·be final and conclusive, the decision of such trustees is binding on an employee claiming benefits under such plan."

Accordingly, we hold that the quantum of proof by plaintiff in the instant case must be greater than merely a preponderance of the evidence. So holding, we must then consider ARCO's companion argument that the trial court's instructions on burden of proof were erroneous.

Of the trial court's seven instructions, two can be said to have dealt with plaintiff's burden of proof. Instruction 1 states in part "that the burden of proof is on the plaintiff to prove the affirmative allegations of his petition by a preponderance of the evidence." In Instruction 2 preponderance of the evidence is defined as "that class or character of testimony which weighs most heavily upon your minds and is most convincing in its nature."

Additionally the trial court gave instructions dealing with that burden of proof necessary for plaintiff to show arbitrary and capricious action on the part of

ARCO. These instructions, numbered 5 and 6, when combined are almost identical to ARCO's Requested Instruction 5, refusal of its submission in full to the jury being the basis for ARCO's claim of error in instruction on the proper burden of proof. The section in controversy is that contained in the trial court's Instruction 6, which we here copy in part, inserting by means of brackets those additional words desired by ARCO but refused by the court:

"It is not your function to determine whether the defendant's decision regarding Mr. Hansen's severance pay is the decision you would have made. Instead, you are instructed that the burden is on Mr. Hansen to prove arbitrariness and capriciousness in arriving at that decision. Arbitrariness and capriciousness are never presumed but must be [overwhelmingly] proved. If, under the evidence in this case, you could only find that there was a possibility that arbitrariness and capriciousness existed in the company's decision or that it did not so exist, then you should find that it did not and your verdict should be for the defendant.

"You should return a verdict for the plaintiff [only] if, under the evidence in the case, you can determine that [beyond a probability] the defendant acted in an arbitrary and capricious manner in denying the termination benefits the plaintiff seeks."

After having studied the above instruction, and placing it within the context of all of the trial court's instructions presented to the jury, we reach the following conclusions: First, the trial court's Instruction 1 mislead the jury with regard to the correct burden of proof. Nothing contained in Instruction 6 nor any other instruction of the trial court operated so as to remove the misconception. Quite clearly the jury was instructed and concluded its deliberation under the impression that plaintiff Hansen need make a showing by only a preponder-

ance of the evidence to prevail. The instruction requested by defendant ARCO would have properly instructed the jury that the standard which plaintiff was required to attain was by overwhelming evidence. We conclude that the trial court's instruction on the burden of proof as to arbitrariness and capriciousness was erroneous.

Plaintiff argues further, however, that if such an instruction was error it was harmless as the evidence presented was of such a nature that even the higher burden was met. He thereafter urges application of the rule stated in *Carver v. Knutson Elevators, Inc.,* Okl., 285 P.2d 391 (1955):

"Where errors complained of involve the giving of an erroneous instruction or the admission of incompetent testimony, this Court will not disturb the judgment rendered where it is apparent that the errors complained of did not result in a miscarriage of justice."

We do not agree that the rule is applicable. First, from the evidence contained in the record, we cannot conclude that plaintiff has proven overwhelmingly that defendant ARCO acted arbitrarily and capriciously. Secondly, this error, both alone and when in combination with others hereinafter mentioned, was of such a nature that a new trial is a necessity.

Finally, plaintiff argues that as the trial court "meticulously conducted [the trial] in accordance with the mandate of the Appellate Court" no error can now lie under the "law of the case" doctrine. This doctrine is espoused in *Oklahoma City Elec., Gas and Power Co. v. Baumhoff,* 21 Okl. 503, 96 P. 758 (1908), where the court in its syllabus said:

"If upon a cause being remanded for a new trial, the court below has proceeded in substantial conformity to the directions of the appellate court, its actions will not be questioned on a second appeal."

The doctrine, however, does not have the effect which plaintiff contends in his brief which, if adopted, would virtually remove any opportunity for a second appeal. The *Baumhoff* case limited the application of the "law of the case" doctrine by the following language:

"No question necessarily *involved and decided* on that [the first] appeal will be considered on a subsequent appeal or writ of error in the same case." (emphasis ours)

■ The initial appeal of this case was from the trial court's granting of summary judgment to ARCO. The appellate court reversed and remanded the case saying:

"The controlling question that must be answered in this case, is did the defendant Company act in an arbitrary or capricious manner in exercising its discretion in determining plaintiff's eligibility to receive benefits under the Policy? We hold this to be a substantial question of fact that is in controversy and the depositions, and affidavits on file do not resolve this question."[3]

Not involved or decided in that appeal were questions involving plaintiff's burden of proof or the correctness of the trial court's instructions to the jury. The doctrine is clearly, therefore, inapplicable to the situation presently before us.

Appellant ARCO next complains that the trial court erroneously failed to give its requested instructions numbered 3 and 4.

■ Requested Instruction 3 asks that the jury determine whether Mr. Hansen was terminated as a result of the merger and, if he was not, to return a verdict for defendant. This instruction was properly refused by the trial court. The instruction requested the jury to determine if Mr. Hansen was declared surplus by ARCO or voluntarily resigned after accepting employment with ARCO. If the jury found, the instruction continued, the latter to have

occurred, they were to return a verdict for defendant ARCO. It is uncontested by the parties that the latter situation in actuality did occur. But this case is concerned with whether the failure or refusal to declare Mr. Hansen surplus was an arbitrary or capricious act committed by ARCO. Instruction 3 requested by ARCO would have improperly removed the question of arbitrariness or capriciousness from the jury's consideration. It is not an accurate portrayal of the law in this case and to give such an instruction to the jury would have been error. The situation with regard to the declaring of plaintiff surplus was covered correctly in Instruction 6.

■ A different matter is presented, however, by Requested Instruction 4. By this instruction the jury should return a verdict for ARCO if they find that plaintiff was offered a job of substantially similar status and compensation. This instruction should have been given to the jury for two reasons. First, within this instruction is a definition of the phrase "substantially similar status and compensation." The phrase is contained in requirement (d) of the Policy regarding termination allowances. As most of the trial focused upon whether the positions held by plaintiff prior and subsequent to the merger were comparable, a concise definition of the phrase is desirable.

Secondly, in order for plaintiff to prevail he must prove two things: (1) that the positions were not of substantially similar status and compensation and (2) that the decision of ARCO's Management Review Committee was arbitrary and capricious. The former need only be shown by a preponderance of the evidence; the latter, overwhelmingly. Separate instructions on these two elements need be given because of the difference in standards of proof involved and the fact that failure to prove either should result in no recovery for plaintiff. To not allow Requested In-

---

**3.** *Hansen v. Atlantic Richfield Co.,* supra.

struction 4 was to deny ARCO one of its defenses and consequently was reversible error.

■ ARCO next contends that: "The trial court erred in refusing to allow defendant to present evidence as to what information had been received by members of the review committee."

The alleged wrongful exclusion of evidence occurred during examination of Dan Gallis, one of the members of ARCO's review committee. As part of Mr. Gallis' duties on the committee he was to collect information, bring it to the committee's attention, and based upon information he had acquired, recommend to the committee what action need be taken.

He was allowed to testify concerning what individuals he had contacted and their positions with ARCO. He was not permitted to testify as to the information he received in response to his inquiries about the comparability of Mr. Hansen's present position to the one he formerly held with Sinclair. The basis for exclusion of the evidence by the trial court was that it was hearsay.

We agree with appellant ARCO that the evidence should have been admitted. In *Marr v. Putnam*, 213 Or. 17, 321 P.2d 1061 (1958) it is stated:

"The exclusionary force of the hearsay rule is not applicable when the extrajudicial statement of a third person is not offered to prove the truth of the utterance, but only to show that the statement was made. Where the mere fact that the statement was made is independently relevant, regardless of its truth or falsity . . . such evidence is admissible."

See also *M. F. Patterson Dental Supply Co. v. Wadley*, 10th Cir., 401 F.2d 167 (1968); *Feil v. State*, 81 Okl.Cr. 133, 161 P.2d 770 (1945); *Bumb v. Bennett*, 51 Cal.2d 294, 333 P.2d 23 (1958); *Martin v. Argonaut Ins. Co.*, 91 Idaho 885, 434 P.2d 103 (1967). Since here the evidence was

offered merely to show what information the committee had before it in making its decision and the statements were therefore offered to show that they had been made and not for the truth thereof, they were admissible as an exception to the hearsay rule.

Plaintiff does not seriously contend that the trial court correctly ruled the statements inadmissible, but instead argues that appellant did not make a proper offer of proof, therefore not preserving a sufficient record to demonstrate this error to be prejudicial. Though there was no formal offer of proof, counsel made known the nature of the proof to be made. Since the case must be remanded for a new trial on other grounds, it is not essential that we determine the adequacy of the record and it is sufficient that we hold that the evidence is not inadmissible under the hearsay rule.

■ Appellant's final argument is that the trial court erred in awarding plaintiff attorney's fees in this action. We will deal with this issue so that a proper determination can be made by the trial court on remand.

The statute apparently relied upon in granting attorney's fees to plaintiff was 12 O.S.1971 § 936 which reads as follows:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

If this can be termed an action on a contract for labor or services then the prevailing party is entitled to a reasonable attorney's fee. We answer the question affirmatively and agree with the trial court that

the awarding of attorney's fees to the prevailing party is proper in this case.

The purpose of the Policy implemented by ARCO is apparent to us: to induce those employees of Sinclair to remain in their present jobs until such time as the integration of operations of the two companies could be effectuated. Since the plan was to induce plaintiff to continue employment in his present position the Policy was an enforceable contract for services. See *Frazer & Torbett, CPA's v. Kunkel*, Okl., 401 P.2d 476 (1965). Accordingly it is proper under 12 O.S.1971 § 936 to award attorney's fees to the prevailing party.

This case is reversed and remanded for a new trial.

BACON, J., concurs.

BRIGHTMIRE, J., not participating.